# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 17-51014 |
| | § | |
| **KNIGHT ENERGY HOLDINGS, LLC**, *et al.*,[1] | § | Jointly Administered |
| | § | |
| | § | Chapter 11 |
| Debtors. | § | |
| | § | Judge Robert Summerhays |

## DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION
## AS OF OCTOBER 17, 2017

> **THIS CHAPTER 11 PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE. ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE. NOTHING CONTAINED IN THIS CHAPTER 11 PLAN SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL THE OCCURRENCE OF THE EFFECTIVE DATE OF THIS PLAN ON THE TERMS DESCRIBED HEREIN, DEEMED BINDING ON ANY OF THE PARTIES HERETO.**

William H. Patrick, III (LA #10359)
Douglas S. Draper (LA #5073)
Tristan Manthey (LA #24539)
Cherie D. Nobles (LA #30476)
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
Telephone: 504.299.3300
Facsimile: 504.299.3399

**HELLER, DRAPER, PATRICK, HORN & DABNEY, L.L.C.**

**COUNSEL TO THE DEBTORS AND DEBTORS-IN-POSSESSION**

Dated: October 17, 2017

---

[1] The Debtors in these chapter 11 cases (collectively, the "*Debtors*" and each individually a, "*Debtor*"), along with the last four digits of each Debtor's federal tax identification number, are Knight Energy Holdings, LLC (1930) (Case No. 17-51014); Knight Oil Tools, LLC (2667) (Case No. 17-51015); Knight Manufacturing, LLC (0600) (Case No. 17-51016); KDCC, LLC, f/k/a Knight Well Services, LLC (4156) (Case No. 17-51017); Tri-Drill, LLC (4957) (Case No. 17-51018); Advanced Safety & Training Management, LLC, (0510) (Case No. 17-51019); Knight Security, LLC (0923) (Case No. 17-51020); Knight Information Systems, LLC (9787) (Case No. 17-51021); El Caballero Ranch, Inc. (7345) (Case No. 17-51022); Rayne Properties, LLC (7235) (Case No. 17-51023); Knight Aviation, LLC (3329) (Case No. 17-51024); Knight Research & Development, LLC (3760) (Case No. 17-51025); Knight Family Enterprises, LLC (7190) (Case No. 17-51026); HMC Leasing, LLC (0814) (Case No. 17-51027) and HMC Investments, LLC (8254) (Case No. 17-51029). The Debtors' service address is 2727 SE Evangeline Thruway, Lafayette, Louisiana 70508 other than Knight Manufacturing, LLC and Advanced Safety & Training Management, LLC. Knight Manufacturing, LLC's service address is 2810-A Melancon Road, Broussard, Louisiana 70518 and Advanced Safety & Training Management, LLC's service address is 2725 SE Evangeline Thruway, Lafayette, Louisiana 70508.

US 5090234v.57

# TABLE OF CONTENTS

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF
  TIME, GOVERNING LAW, AND OTHER REFERENCES ............................................ 1

    A. Defined Terms ................................................................................................. 1
    B. Rules of Interpretation ................................................................................... 18
    C. Computation of Time ..................................................................................... 18
    D. Governing Law .............................................................................................. 18
    E. Reference to Monetary Figures ...................................................................... 19
    F. Reference to the Debtors or the Reorganized Debtors ..................................... 19
    G. Controlling Document .................................................................................... 19

ARTICLE II ADMINISTRATIVE, PROFESSIONAL AND PRIORITY TAX CLAIMS ......... 19

    A. Administrative Claims ................................................................................... 19
    B. Professional Claims ....................................................................................... 20
    C. Priority Tax Claims ....................................................................................... 21
    D. DIP Financing Claims .................................................................................... 21

ARTICLE III CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND
  INTERESTS .................................................................................................... 22

    A. Classification of Claims and Interests ............................................................ 22
    B. Treatment of Classes of Claims and Interests ................................................. 23
    C. Special Provision Governing Unimpaired Claims ........................................... 29
    D. Elimination of Vacant Classes ....................................................................... 29
    E. Voting Classes; Presumed Acceptance by Non-Voting Classes ....................... 29
    F. Intercompany Interests ................................................................................... 30
    G. Subordinated Claims ...................................................................................... 30
    H. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ................. 30

ARTICLE IV PROVISIONS FOR IMPLEMENTATION OF THE PLAN ................................ 30

    A. General Settlement of Claims and Interests .................................................... 30
    B. Comprehensive Settlement ............................................................................ 31
    C. Restructuring Transactions ............................................................................ 32
    D. Sources of Consideration for Plan Distributions and the Comprehensive Settlement
       Distribution ................................................................................................... 33
    E. Management Incentive Plan ............................................................................ 38
    F. New Mortgage Loans ..................................................................................... 39
    G. Professional Fees and Expenses ..................................................................... 43
    H. Exemption from Registration Requirements ................................................... 43
    I. Corporate Existence ....................................................................................... 44
    J. Vesting of Assets in the Reorganized Debtors ................................................ 44
    K. Cancelation of Notes, Instruments, Certificates, and Other Documents ........... 45
    L. New Organizational Documents ..................................................................... 45
    M. Effectuating Documents; Further Transactions ............................................... 45
    N. Section 1146(a) Exemption ............................................................................ 46

US 5090234v.57

O. Directors and Officers ........................................................................................ 46
P. Incentive Plans and Employee and Retiree Benefits ....................................... 47
Q. Preservation of Rights of Action ....................................................................... 47

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES 48

A. Assumption/Rejection of Executory Contracts and Unexpired Leases ............ 48
B. Cure of Defaults and Objections to Cure and Assumption .............................. 50
C. Contracts, Intercompany Contracts, and Leases Entered Into After the Petition Date ..... 51
D. Insurance Policies ............................................................................................ 51
E. Rejection ........................................................................................................... 51
F. Non-Occurrence of Effective Date ................................................................... 51
G. Reservation of Rights ....................................................................................... 52

ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS ................................................. 52

A. Distributions on Account of Claims and Interests ............................................ 52
B. Rights and Powers of Distribution Agent ........................................................ 52
C. Special Rules for Distributions to Holders of Disputed Claims and Interests ..... 53
D. Delivery of Distributions .................................................................................. 53
E. Claims Paid or Payable by Third Parties ......................................................... 56
F. Setoffs .............................................................................................................. 56

ARTICLE VII PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS 57

A. Disputed Claims Process .................................................................................. 57
B. Claims Administration Responsibilities ........................................................... 57
C. Time to File Objections to Claims .................................................................... 58
D. No Interest ........................................................................................................ 58
E. Disallowance of Claims and Interests .............................................................. 58

ARTICLE VIII EFFECT OF CONFIRMATION OF THE PLAN ............................................ 59

A. Discharge of Claims and Termination of Interests ........................................... 59
B. Releases by the Debtors .................................................................................... 59
C. Releases by Holders of Claims and Interests ................................................... 60
D. Exculpation ....................................................................................................... 61
E. Injunction .......................................................................................................... 62
F. Protection Against Discriminatory Treatment .................................................. 62
G. Recoupment ...................................................................................................... 62
H. Document Retention ......................................................................................... 63
I. Reimbursement or Contribution ....................................................................... 63
J. Release of Liens ................................................................................................ 63

ARTICLE IX CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ............................. 64

A. Conditions Precedent to the Effective Date ..................................................... 64
B. Waiver of Conditions Precedent ....................................................................... 65
C. Notice of Occurrence of Effective Date ........................................................... 65
D. Effect of Non-Occurrence of Conditions to Consummation ........................... 65

ii

ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN......... 66

    A.  Modification of Plan ...................................................................................................... 66
    B.  Effect of Confirmation on Modifications ..................................................................... 66
    C.  Withdrawal of Plan ...................................................................................................... 66

ARTICLE XI RETENTION OF JURISDICTION .................................................................... 67

ARTICLE XII MISCELLANEOUS PROVISIONS .................................................................. 68

    A.  Immediate Binding Effect ............................................................................................ 68
    B.  Additional Documents ................................................................................................. 69
    C.  Payment of Statutory Fees .......................................................................................... 69
    D.  Reservation of Rights................................................................................................... 69
    E.  Successors and Assigns................................................................................................ 69
    F.  Service of Documents .................................................................................................. 69
    G.  Term of Injunctions or Stays....................................................................................... 70
    H.  Entire Agreement ......................................................................................................... 70
    I.  Plan Supplement Exhibits ........................................................................................... 70
    J.  Non-Severability.......................................................................................................... 70
    K.  Votes Solicited in Good Faith...................................................................................... 70
    L.  Closing of Chapter 11 Cases........................................................................................ 71
    M.  Waiver or Estoppel ...................................................................................................... 71

US 5090234v.57

**INTRODUCTION**

Knight Energy Holdings, LLC and the other debtors and debtors-in-possession in the above-captioned chapter 11 cases jointly propose this Plan. Capitalized terms used in the Plan shall have the meanings set forth in Article I.A of the Plan. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. The Debtors seek to consummate the Restructuring Transactions on the Effective Date of the Plan. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate substantive consolidation of any of the Debtors. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of this Plan, the Restructuring Transactions, and certain related matters.

---

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

---

**ARTICLE I**
**DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES**

A.    *Defined Terms*

1.    "***Additional New First Lien Term Loans***" means New First Lien Term Loans advanced or deemed advanced under the New First Lien Facility from time to time other than the Initial New First Lien Term Loan.

2.    "***Administrative Claim***" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Claims; (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code; and (d) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

3.    "***Administrative Claim Bar Date***" means the deadline for filing requests for payment of Administrative Claims, which shall be thirty (30) days after the Effective Date.

4.    "***Affiliate***" has the meaning set forth in section 101(2) of the Bankruptcy Code.

5.    "***Allowed***" means, with respect to any Claim, except as otherwise *provided* in the Plan: (a) a Claim that is evidenced by a Proof of Claim Filed by the Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall

US 5090234v.57

not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed by any party in interest within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court and such time period has expired, or such an objection is so interposed and the Claim, as applicable, shall have been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable. For the avoidance of doubt: (x) a Proof of Claim Filed after the Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim; (y) notwithstanding anything to the contrary herein, the definition of "Allowed" herein and therein incorporates by reference the terms of paragraph 56 of the Final DIP Financing Order, including that there shall be no requirement that the Senior Credit Facility Administrative Agent or any Senior Credit Facility Lender file a Proof of Claim in respect of any Senior Credit Facility Claim in order for such Senior Credit Facility Claim to be allowed.

6.      "***Avoidance Action***" means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by any of the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law.

7.      "***Bankruptcy Code***" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

8.      "***Bankruptcy Court***" means the United States Bankruptcy Court for the Western District of Louisiana – Lafayette Division or such other court having jurisdiction over the Chapter 11 Cases.

9.      "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases, and the general, local, and applicable standing orders, if any, of the Bankruptcy Court.

10.      "***Bar Date***" means the date established by the Bankruptcy Court by which Proofs of Claim must be Filed with respect to such Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims or Interests for which the Bankruptcy Court has entered an order excluding the holders of such Claims or Interests from the requirement of Filing Proofs of Claim or Interests.

2

11.     "***Business Day***" means any day, other than a Saturday, Sunday, or a legal holiday, as defined in Bankruptcy Rule 9006(a).

12.     "***Cash***" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

13.     "***Causes of Action***" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) Avoidance Actions and claims pursuant to sections 362, 510, 542, and 543 of the Bankruptcy Code or under similar or related state or common laws; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

14.     "***Certificate***" means any instrument evidencing a Claim or an Interest.

15.     "***Chairman Emeritus***" has the meaning assigned such term in Article IV.O of the Plan.

16.     "***Chapter 11 Cases***" means the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

17.     "***Claim***" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

18.     "***Claims Register***" means the official register of Claims against and Interests in the Debtors maintained by the Solicitation Agent.

19.     "***Class***" means a class of holders of Claims or Interests under section 1122(a) of the Bankruptcy Code as set forth in Article III of the Plan.

20.     "***Committee***" means the official committee of unsecured creditors appointed by the United States Trustee pursuant to the *Notice of Appointment of Unsecured Creditors' Committee* [Docket No. 154] as subsequently expanded pursuant to the *Supplemental Notice of Appointment of Creditors' Committee* [Docket No. 376] and as subsequently expanded or reduced from time to time.

21.     "***Committee-Appointed Claims Dispute Representative***" means that person who shall be appointed by the Committee prior to the Confirmation Hearing as a representative of the Holders of Class 9 Claims and who shall have the roles and authorities provided for in Article VII.B of the Plan.

US 5090234v.57

22. "**Comprehensive Settlement**" has the meaning given such term in Article IV.B of the Plan.

23. "**Comprehensive Settlement Distribution**" means the retention by and distribution to the Consenting Holders of the Reorganized Knight Settlement Interests and the Equity Warrants to effect the Comprehensive Settlement.

24. "**Confirmation**" means entry of the Confirmation Order on the docket of the Chapter 11 Cases.

25. "**Confirmation Date**" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

26. "**Confirmation Hearing**" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

27. "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

28. "**Consenting Holders**" means the holders of all Interests in Holdings, Leasing, and Enterprises, which holders are party to the RSA and qualify as Consenting Holders under the RSA as of the Effective Date.

29. "**Consenting Holders Cash Contribution**" means a Cash amount equal to 50% multiplied by (a) $1.6 million, *minus* (b) an amount equal to (x) $2,450,000 *minus* (y) the sum of all amounts expended by the Debtors prior to the Effective Date under the authority granted to them in the: (i) *Interim Order Authorizing Debtors to Pay or Honor Prepetition Obligations to Critical Vendors* [Docket No. 59], (ii) *Final Order Authorizing Debtors to Pay or Honor Prepetition Obligations to Critical Vendors* [Docket No. 259], (iii) *Interim Order Authorizing the Payment of Claims on Account of Mineral Contractor Liens that May Be Filed Against the Debtors' Customers and Granting Related Relief* [Docket No. 61], or (iv) *Final Order Authorizing the Payment of Claims on Account of Mineral Contractor Liens that May Be Filed Against the Debtors' Customers and Granting Related Relief* [Docket No. 260].

30. "**Consenting Lenders**" means the lenders under the Senior Credit Facility that are party to the RSA.

31. "**Consummation**" means the occurrence of the Effective Date.

32. "**Cure**" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

33. "**Debtors**" means the Debtors identified in footnote 1 of this Plan.

4

34. "***Description of Transaction Steps***" means the description of the Restructuring Transactions set forth in the Plan Supplement.

35. "***DIP Financing***" means the senior secured superpriority delayed draw loan financing in an aggregate principal amount of up to $14,500,000, provided in connection with the DIP Financing Agreement as approved by the Bankruptcy Court pursuant to an interim or a final order.

36. "***DIP Financing Administrative Agent***" means the administrative agent under the DIP Financing.

37. "***DIP Financing Agreement***" means the Senior Secured Debtor-in-Possession Credit Agreement dated August 9, 2017, by and among the Debtors, the DIP Financing Administrative Agent, and the DIP Financing Lenders.

38. "***DIP Financing Claim***" means any Claim against the Debtors on account of the DIP Financing.

39. "***DIP Financing Lender***" means a lender under the DIP Financing.

40. "***Disclosure Statement***" means the disclosure statement for the Plan, including all exhibits and schedules thereto.

41. "***Disputed***" means, with respect to any Claim or Interest, a Claim or Interest that is not yet Allowed, including (a) any Proof of Claim that, on its face, is contingent or unliquidated; (b) any Proof of Claim or request for payment of an Administrative Claim filed after the Effective Date or the deadline for filing Proofs of Claim based on the Debtors' rejection of Executory Contracts or Unexpired Leases, as applicable, and (c) any Claim that is subject to an objection or a motion to estimate, in each case that has not been Allowed by a Final Order of the Bankruptcy Court or by agreement with the Debtors or the Reorganized Debtors, as applicable.

42. "***Distribution Agent***" means, as applicable, the Reorganized Debtors or any Entity the Reorganized Debtors select to make or to facilitate distributions in accordance with the Plan.

43. "***Distribution Date***" means, except as otherwise set forth herein, the date or dates determined by the Debtors or the Reorganized Debtors in consultation with the Committee-Appointed Claims Dispute Representative, on or after the Effective Date, upon which the Distribution Agent shall make distributions to holders of Allowed Claims and/or Interests entitled to receive distributions under the Plan.

44. "***Distribution Record Date***" means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the first day of the Confirmation Hearing.

45. "***Effective Date***" means the date that is the first Business Day designated in the Notice of the Occurrence of the Effective Date filed in the Chapter 11 Cases pursuant to Article IX.C on which date (a) no stay of the Confirmation Order shall be in effect, (b) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of the Plan shall have

US 5090234v.57

been satisfied or waived in accordance with Article IX.B of the Plan, and (c) the Debtors, with the consent of the Majority Consenting Lenders, shall declare the Plan effective. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

46. "*Enterprises*" means Knight Family Enterprises, LLC.

47. "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

48. "*Equity Security*" has the meaning set forth in section 101(16) of the Bankruptcy Code and includes, for the avoidance of doubt, any common stock, preferred stock, member units or interests, partnership interests, warrant, option, or other contractual right conveying ownership in a legal entity.

49. "*Equity Warrant Agreement*" means the document governing the Equity Warrants, the form of which shall be included in the Plan Supplement.

50. "*Equity Warrants*" means the warrants issued under Warrant Tranche 1 and Warrant Tranche 2 to the Consenting Holders as part of the Comprehensive Settlement Distribution, as more fully described in Article IV.D of the Plan.

51. "*Estate*" means the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

52. "*Exchange Act*" means the Securities Exchange Act of 1934, as now in effect or hereafter amended.

53. "*Exculpated Party*" means, to the fullest extent permitted by law, collectively, and in each case in its capacity as such: (a) the Debtors; (b) any official committees appointed in the Chapter 11 Cases (if any) and each of their respective members; (c) the Consenting Lenders; (d) the New First Lien Facility Lenders; (e) the New First Lien Facility Agent; (f) the Consenting Holders; (g) the Senior Credit Facility Administrative Agent; (h) each DIP Financing Lender; (i) the DIP Financing Administrative Agent; and (j) with respect to each of the foregoing, such Entity and its current and former Affiliates, and such Entity's and its current and former Affiliates' current and former equity holders (regardless of whether such Interests are held directly or indirectly), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such, *provided however* that no Non-Released Party shall be an Exculpated Party.

54. "*Exculpations*" means the exculpations granted pursuant to Article VIII.D of the Plan.

55. "*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

56. "*Final Claims Objection Deadline*" means the date falling sixty (60) days after the First Claims Objection Deadline.

US 5090234v.57

57. "**Final Decree**" means the decree contemplated under Bankruptcy Rule 3022.

58. "**Final DIP Financing Order**" means the *Final Order Authorizing Limited Use of Cash Collateral, Obtaining Post-Petition Financing Secured By Senior Liens, and Granting Adequate Protection to Existing Lienholders* [Docket No. 276] entered by the Bankruptcy Court on September 8, 2017.

59. "**Final Order**" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided, however,* the potential of a motion for relief from such order under Bankruptcy Rule 60 shall not prevent an order from being a Final Order.

60. "**First Claims Objection Deadline**" means the later of (1) the date falling one hundred eighty (180) days after the Effective Date, which date may be extended by *ex parte* application of the Reorganized Debtors, and (2) such later period of limitation as may be specifically fixed by the Debtors or the Reorganized Debtors, as applicable, or by a Final Order of the Bankruptcy Court for objecting to Claims, (x) prior to which, and subject to the limitations in any Final Order entered by the Bankruptcy Court, only the Reorganized Debtors may object to Claims filed in these Chapter 11 Cases, and (y) after which only the Reorganized Debtors or the Committee-Appointed Claims Dispute Representative may object to Claims.

61. "**First Lien Distribution**" means the distribution of the Initial New First Lien Term Loan and 80% of the Reorganized Knight Interests for the benefit of the holders of Allowed Secured Senior Credit Facility Claims on the Effective Date pursuant to Article III.B of the Plan.

62. "**Frierson Collateral**" means certain real property and improvements located at 507 Park Road, Frierson, LA which secure the obligations of Leasing under the Iberia Loan.

63. "**General Unsecured Claim**" means any unsecured Claim that is not an Unsecured Convenience Class Claim, an Administrative Claim, a Professional Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim, a JPM Loans Claim (except as otherwise provided in the Plan), an Iberia Loan Claim, a Secured Senior Credit Facility Claim, a DIP Financing Claim, an Intercompany Claim, or a Section 510(b) Claim.

64. "**General Unsecured Claims Fund**" means an amount equal to (a) $2.6 million *minus* (b) the aggregate amounts paid to Holders of Allowed Unsecured Convenience Class Claims pursuant to this Plan and certain expenses to be incurred in the resolution of Claims.

65. "**Governmental Unit**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

US 5090234v.57

66.    "*Headquarters Collateral*" means the real property and improvements comprised of approximately 27.890 acres in Lafayette Parish, Louisiana, with a primary municipal address of 2727 SE Evangeline Thruway, Lafayette, Louisiana and which secure the obligations of Enterprises under the JPM Commercial Loans.

67.    "*Holdings*" means Knight Energy Holdings, LLC.

68.    "*Iberia*" means IberiaBank.

69.    "*Iberia Collateral*" means, as more particularly described in the mortgages, deeds of trust and security agreements, the real property and improvements:  3 Layos Drive, Rock Springs, Wyoming 82901; 2810-A Melancon Road, Broussard, Louisiana 70518; 1001 Briar Patch Road Broussard, Louisiana 70518; 200 and 700 East Texas Avenue, Rayne, Louisiana 70578; 4.38 acres located on Pinhook Rd, Lafayette, LA; Lot 17, Vernal Airport Park, Uintah County, Utah; the Oklahoma City Collateral and the Frierson Collateral.  For the avoidance of doubt, the legal description in the mortgages, deeds of trust or security agreements shall control.

70.    "*Iberia Interest Rate*" has the meaning given such term in Article IV.F.b of the Plan.

71.    "*Iberia Loan Claims*" means Claims arising under the Iberia Loans.

72.    "*Iberia Loans*" means that certain mortgage loan with Iberia as lender and Leasing as borrower which is secured by Liens on certain real estate collateral and which is also guaranteed by Holdings.

73.    "*Iberia Takeback Loans*" means loans under the new loan agreement between Iberia and Reorganized Leasing which shall replace the Iberia Loan on or before the Effective Date and having terms and conditions reflected herein and in the Plan Supplement as agreed between Iberia, Reorganized Leasing, Reorganized Holdings, and the Majority Consenting Lenders.

74.     "*Impaired*" is used to describe a Claim or an Interest that is not Unimpaired.

75.    "*Incremental Tax Costs Gross-Up*" means an aggregate principal amount equal to: 1.8 multiplied by the sum of all advances under the DIP Financing, the Initial Restructuring Claim Advance, and the Secondary Restructuring Claim Advance to the extent such advances were or are used to pay any Allowed Priority Tax Claim for sales, use, or excise taxes for any tax years prior to 2017.

76.    "*Initial New First Lien Term Loan*" has the meaning given such term in Article IV.D of the Plan.

77.    "*Initial Restructuring Claim Advance*" has the meaning given such term in Article IV.D of the Plan.

78.    "*Insurance Policies*" means all insurance policies that have been issued at any time to or provide coverage to any of the Debtors and all agreements, documents or instruments relating thereto.

US 5090234v.57

79. "*Insurer*" means any company or other entity that issued an Insurance Policy, any third party administrator, and any respective predecessors and/or affiliates thereof.

80. "*Injunction*s" means the injunctions provided pursuant to Article VIII.E of the Plan.

81. "*Intercompany Claim*" means any Claim or other obligation between or among two or more Debtors or a Claim or other obligation between or among one or more Debtors and one or more of its Affiliates.

82. "*Intercompany Contract*" means a contract between or among two or more Debtors or a contract between or among one or more Debtors and one or more of its Affiliates.

83. "*Intercompany Interest*" means any Interest in any Debtor held by a Debtor or an Affiliate of a Debtor.

84. "*Interest*" means any Equity Security in any Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

85. "*JPM*" means JPMorgan Chase Bank, N.A.

86. "*JPM Commercial Loans*" means those certain loans with JPM as lender and Enterprises as borrower which are secured by (a) a Lien on the Headquarters Collateral and the JPM Equipment Collateral, and (b) a second priority Lien granted by Leasing on the Seaside Collateral, and which are guaranteed by Holdings.

87. "*JPM Commercial Loans Claims*" means Claims arising under the JPM Commercial Loans.

88. "*JPM Consumer Loan 1*" means that first consumer note with JPM as lender and Leasing as borrower which is secured by a first priority Lien on the Seaside Collateral.

89. "*JPM Consumer Loan 2*" means the second consumer note with JPM as lender and Leasing as borrower which is secured by a Lien on Leasing's deposit accounts with JPM or any of JPM's affiliates.

90. "*JPM Consumer Loans*" means collectively JPM Consumer Loan 1 and JPM Consumer Loan 2.

91. "*JPM Consumer Loans Claims*" means Claims arising under the JPM Consumer Loans.

92. "*JPM Equipment Collateral*" means certain cranes and crane ways located at or in the Headquarters Collateral and which secure the obligations of Enterprises under the JPM Commercial Loans.

9

93. "**_JPM Loans_**" means collectively the JPM Commercial Loans and the JPM Consumer Loans.

94. "**_JPM Takeback Loans_**" means the JPM Commercial Loans and the JPM Takeback Consumer Loans.

95. "**_JPM Takeback Consumer Loans_**" means loans under the new loan agreement between JPM and Reorganized Leasing which shall replace the JPM Consumer Loans on or before the Effective Date and having terms and conditions reflected in the Plan Supplement (1) as agreed between JPM and the Majority Consenting Lenders, or (2) as approved by the Bankruptcy Court pursuant to section 1129(b)(2)(A)(i)(I) and (II), which treatment must be satisfactory to the Majority Consenting Lenders.

96. "**_Leasing_**" mean HMC Leasing, LLC.

97. "**_Lien_**" has the meaning set forth in section 101(37) of the Bankruptcy Code.

98. "**_Majority Consenting Lenders_**" has the meaning assigned such term in the RSA.

99. "**_Management Incentive Plan_**" means that certain management incentive plan, the terms of which shall be determined by the Reorganized Holdings Board after the Effective Date, as more fully described in Article IV.E of the Plan.

100. "**_Mineral Contractor Claim_**" means a Claim that is secured by perfected and nonavoidable statutory mineral liens on property of a customer of the Debtors relating to goods or services provided by the Debtors to such customers and arising under chapter 56 of the Texas Property Code, Art. 4861 of the Louisiana Oil Lien Act, or other similar state or federal laws.

101. "**_MIP Equity_**" has the meaning given such term in Article IV.E of the Plan.

102. "**_New First Lien Facility_**" means a new term loan lending facility providing for the issuance of the Initial New First Lien Term Loan and Additional New First Lien Term Loans from time to time which is to be entered into by the Reorganized Debtors having terms and conditions as summarized in Article IV.D and otherwise as agreed between the Debtors and the Majority Consenting Lenders as set forth in the Plan Supplement.

103. "**_New First Lien Facility Agent_**" means the administrative agent and collateral agent under the New First Lien Facility, if applicable, or any successor thereto, solely in its capacity as such.

104. "**_New First Lien Facility Agreement_**" means the credit agreement establishing the New First Lien Facility, the substantially final form of which shall be included in the Plan Supplement.

105. "**_New First Lien Facility Documents_**" means the New First Lien Facility Agreement and any guarantee, security agreement, deed of trust, mortgage, and relevant documentation to be entered into with respect to the New First Lien Facility.

US 5090234v.57

106.	"*New First Lien Facility Lenders*" means each of the lenders under the New First Lien Facility, solely in their capacity as such.

107.	"*New First Lien Term Loans*" means the term loans advanced or deemed advanced to the Reorganized Debtors under the New First Lien Facility either as the Initial New First Lien Term Loan or the Additional New First Lien Term Loans.

108.	"*New First Lien Term Loans Initial Amount*" means $25.5 million aggregate principal amount.

109.	"*New Leases*" means new five (5) year leases on terms mutually agreeable to the Consenting Holders and the Majority Consenting Lenders (including the amount of rent) for certain of the Debtor's operating locations currently owned or affiliated with the family members of certain Consenting Holders (excluding properties owned by Leasing and Enterprises).

110.	"*New Mortgage Loans*" has the meaning given such term in Article IV.F of the Plan.

111.	"*New Organizational Documents*" means the Reorganized Knight Organizational Documents and, as applicable, the certificates of incorporation, certificates of formation, bylaws, shareholders' agreement, limited liability company agreement, or functional equivalent thereof with respect to each Reorganized Debtor, in each case the forms of which shall be contained in the Plan Supplement and subject to the RSA.

112.	"*Non-Consenting Holder*" means any Interest holder of Holdings, Enterprises, or Leasing who (a) has not executed the RSA as a Consenting Holder, or (b) has breached its obligations as a Consenting Holder under the RSA prior to the Effective Date.

113.	"*Non-Core Properties*" shall have the meaning given such term in Art.IV.F.b

114.	"*Non-Released Parties*" means any (a) former officers and directors of the Debtors who are not Consenting Holders, (b) any non-Debtor affiliates or subsidiaries of the Debtors, (c) any Non-Consenting Holder, (d) Non-Consenting Holder's descendants and Entities under such Non-Consenting Holder's or its descendants' exclusive ownership or control, and (e) any Released Party that objects, denies consent, or in any way attempts to impede the execution of the RSA, the filing of the Cases, the filing and consummation of the Plan, or the implementation of the Restructuring Transactions.

115.	"*Non-Vesting Asset*" means (i) property of any Debtor's Estate that is abandoned under section 554 of the Bankruptcy Code prior to the Effective Date with the consent of the Debtors and the Majority Consenting Lenders, (ii) all of the Debtors' equity interests in the following legal entities which shall be abandoned under section 544 of the Bankruptcy Code on the Effective Date: (1) Knight International LLC, (2) Knight Dutch Holdings LLC, (3) Knight Oil Tools Netherlands Cooperatief U.A., (4) Knight Oil Tools (Dutch Holdings) B.V., (5) Knight Oil Tools Do Brasil Servicos Ltda, (6) KOT Knight Oil Tools Oilfield Services Limited, (7) Knight Resources, LLC, (8) Knight Oil Tools Colombia SAS, (9) Knight Oil Tools U.K. Acquisition Company Limited, (10) Cool Group Limited, (11) Global Rentals U.K. Limited, (13) Knight Oil Tools Norway A.S., (14) Pedem Norway A.S., (15) Knight Oil Tools Holland B.V., (16) Knight

US 5090234v.57

Oil Tools (Australia) PTY LTD, (17) Knight Oil Tools Middle East DMCC, (18) Knight Oil Tools Switzerland GmbH, (19) Knight International Acquisitions, LLC, and (iii) any asset, right, arrangement, non-executory contract, or other property that is listed in the Plan Supplement as a Non-Vesting Asset (including amendments to clauses (i) and (ii) of this definition) with the consent of the Debtors and the Majority Consenting Lenders.

116. "*Notice of the Occurrence of the Effective Date*" shall have the meaning given such term in Article IX.C.

117. "*Old Equity Claims*" has the meaning given such term in Article IV.K of the Plan.

118. "*Oklahoma City Collateral*" means that certain real property located at the SE Corner of Interstate Hwy. 40 and N. Cimarron Rd., Oklahoma City, OK securing the obligations of Leasing under the Iberia Loan.

119. "*Other Priority Claim*" means any Claim other than an Administrative Claim, a DIP Financing Claim, or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

120. "*Other Secured Claim*" means any Secured Claim, including any Secured Tax Claim, but excluding a Senior Credit Facility Claim, a JPM Loans Claim, an Iberia Loan Claim, or a DIP Financing Claim.

121. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

122. "*Petition Date*" means the date on which the Chapter 11 Cases were commenced.

123. "*Plan*" means this chapter 11 plan, including the Plan Supplement and all exhibits, supplements, appendices, and schedules.

124. "*Plan Supplement*" means any compilation of term sheets, documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case in form and substance satisfactory to the Debtors and the Majority Consenting Lenders), which shall be filed by the Debtors no later than five (5) days prior to the deadline to object to confirmation of the Plan or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments or supplements to the Plan Supplement, each of which shall be consistent in all respects with, and shall otherwise contain, the terms and conditions set forth on the exhibits attached hereto, where applicable.

125. "*Plan Transaction Documents*" means all definitive documents and agreements to which the Debtors, the Reorganized Debtors or Reorganized Knight will be a party as contemplated by the RSA and the Plan, including (a) the Plan and any documentation or agreements related thereto; (b) the Confirmation Order and pleadings in support of entry thereof; (c) the New Organizational Documents; (d) the New First Lien Facility Documents; (e) the Warrants; (f) the DIP Financing; and (g) each other document that will comprise the Plan Supplement. The form and substance of each document comprising the Plan Transaction Documents shall be acceptable to the Debtors and the Majority Consenting Lenders.

12

US 5090234v.57

126. "**Preference Actions**" means any Cause of Action of the Debtors or the Reorganized Debtors under section 547 of the Bankruptcy Code.

127. "**Priority Tax Claim**" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

128. "**Pro Rata**" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

129. "**Professional**" means an Entity: (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

130. "**Professional Claim**" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

131. "**Professional Fee Amount**" means the aggregate amount of Professional Claims and other unpaid fees and expenses Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Effective Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.B of the Plan.

132. "**Professional Fee Escrow Account**" means the Carve-Out Reserve Account (as defined in the DIP Financing Agreement) and funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

133. "**Proof of Claim**" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases by the applicable Bar Date.

134. "**Reinstate**," "**Reinstated**," or "**Reinstatement**" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

135. "**Related Party Transaction Resolutions**" means a resolution on terms acceptable to the Consenting Holders, the Debtors, and the Majority Consenting Lenders of any related party transactions or claims not otherwise addressed in the Plan.

136. "**Released Party**" means collectively, and in each case in its capacity as such: (a) the Debtors and the Reorganized Debtors; (b) the Consenting Lenders; (c) the Consenting Holders and such Consenting Holders' family members and Entities under such family members' control; (d) the New First Lien Facility Lenders; (e) the New First Lien Facility Agent; (f) the Senior Credit Facility Administrative Agent; (g) each DIP Financing Lender; (h) the DIP Financing Administrative Agent; (i) the Committee, each member thereof, and all legal and professional advisors thereto (in each case solely in their capacity as a Committee member or legal

US 5090234v.57

or professional advisor to the Committee); and (j) with respect to each of the Debtors, the Reorganized Debtors, and each of the foregoing Entities in clauses (b) through (h), such Entity and its current and former Affiliates in all capacities, and all their respective current and former direct and indirect equityholders, members, partners, subsidiaries, affiliates, portfolio companies, managers, managing members, officers, directors, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents, and other representatives (including their respective equityholders, members, partners, subsidiaries, affiliates, funds, managers, managing members, officers, directors, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents, and other representatives) *provided, however,* that no Non-Released Party shall be a Released Party.

137. "*Releases*" mean the releases of claims under Article VIII.B or VIII.C of the Plan, as applicable.

138. "*Releasing Parties*" means, collectively, (a) the Consenting Lenders; (b) the Consenting Holders and such Consenting Holders' family members and Entities under such family members' control; (c) the New First Lien Facility Lenders; (d) the New First Lien Facility Agent; (e) the Senior Credit Facility Administrative Agent; (f) each DIP Financing Lender; (g) the DIP Financing Administrative Agent; (h) all holders of Claims and Interests who are deemed to accept the Plan; (i) all holders of Claims and Interests who vote to accept the Plan or the Comprehensive Settlement Distribution; (j) all holders of Claims and Interests who abstain from voting on the Plan or the Comprehensive Settlement Distribution and who do not opt out of the releases provided by the Plan; (k) all holders of Claims and Interests who vote to reject the Plan or the Comprehensive Settlement Distribution and who do not opt out of the releases provided by the Plan; and (l) with respect to the foregoing clauses (a) through (k), each such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, principals, members, employees, equity holders (regardless of whether such Interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

139. "*Reorganized Debtor*" means a Debtor, or any successor or assign thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

140. "*Reorganized Holdings Board*" means the initial board of directors of Reorganized Holdings.

141. "*Reorganized Knight*" means a newly formed Entity, that may be, as of the Effective Date, a parent company of the Reorganized Debtors by implementation of the Restructuring Transactions in accordance with and as described in the Description of Transaction Steps.

142. "*Reorganized Knight Governance Documentation*" means the agreement regulating the governance of Reorganized Knight and the Reorganized Debtors, the substantially final form of which shall be included in the Plan Supplement.

US 5090234v.57

143.    "***Reorganized Knight Interests***" means the limited liability company units or other equity interests in Reorganized Holdings and Reorganized Knight. For the avoidance of doubt, Reorganized Knight Interests does not include the Equity Warrants or Management Warrants prior to their respective exercise dates.

144.    "***Reorganized Knight Interests Documents***" means the Reorganized Knight Governance Documentation and the Reorganized Knight Securityholders Agreement. The Reorganized Knight Interests Documents will, among other things, set forth the relative rights and obligations of the holders of Reorganized Knight Interests (including as to voting, transferability, and other matters) with respect to Reorganized Knight Interests and equity-linked interests and related governance matters. The Reorganized Knight Interests Documents will contain customary unitholder protections acceptable to the Majority Consenting Lenders.

145.    "***Reorganized Knight Organizational Documents***" means the Reorganized Knight Interests Documents and the certificate of formation and/or other organizational documents of Reorganized Knight and/or the Reorganized Debtors.

146.    "***Reorganized Knight Securityholders Agreement***" means that certain agreement, dated as of the Effective Date, by and among the holders of Reorganized Knight Interests, the form of which shall be included in the Plan Supplement, and that will supersede and cancel any analogous prepetition shareholders' agreement or investor rights agreement.

147.    "***Reorganized Knight Settlement Interests***" means 20% of the Reorganized Knight Interests which shall be retained by or distributed to the Consenting Holders on the Effective Date as consideration for the Comprehensive Settlement.

148.    "***Restructuring Claims Advance Cap***" has the meaning given such term in Article IV.D of the Plan.

149.    "***Restructuring Support Parties***" means the parties, other than the Debtors, to the RSA.

150.    "***Restructuring Transactions***" has the meaning given such term in Article IV.C of the Plan.

151.    "***RSA***" means that certain Restructuring Support Agreement, dated as of August 8, 2017, by and among the Debtors, the Consenting Lenders, and the Consenting Holders, including all exhibits and attachments thereto.

152.    "***Schedule of Assumed Executory Contracts and Unexpired Leases***" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, filed as part of the Plan Supplement, as may be amended, modified, or supplemented by the Debtors (with the consent of the Majority Consenting Lenders) from time to time prior to the Effective Date.

153.    "***Schedule of Retained Causes of Action***" means the schedule of certain Causes of Action of the Debtors and their Estates which is attached as an exhibit to the Disclosure Statement that are not released, waived, or transferred pursuant to the Plan, which shall be acceptable to the

US 5090234v.57

Debtors and the Majority Consenting Lenders, and as the same may be amended, modified, or supplemented from time to time with the consent of the Majority Consenting Lenders and the Debtors.

154. "*Schedules*" means, collectively, the schedules of assets and liabilities, Schedule of Assumed Executory Contracts and Unexpired Leases, Schedule of Retained Causes of Action, and statement of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as they may be amended, modified, or supplemented from time to time.

155. "*Seaside Collateral*" means that certain real property and improvements located at 2288 E. County Rd. 30-A, Santa Rosa Beach, FL securing JPM Consumer Loan 1 on a first lien basis and the JPM Commercial Loans on a second lien basis.

156. "*Secondary Restructuring Claim Advance*" has the meaning given such term in Article IV.D of the Plan.

157. "*Section 510(b) Claim*" means any Claim arising from: (a) rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors; (b) purchase or sale of such a security; or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

158. "*Secured Claim*" means a Claim: (a) secured by a valid Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

159. "*Secured Senior Credit Facility Claim*" means any Secured Claim that is a Senior Credit Facility Claim.

160. "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for interest and/or penalties.

161. "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a-77aa, or any similar federal, state, or local law.

162. "*Security*" or "*Securities*" has the meaning set forth in section 2(a)(1) of the Securities Act.

163. "*Senior Credit Facility*" means that certain credit agreement dated as of June 26, 2013, as amended from time to time, by and among, *inter alia*, Holdings, Leasing, and Enterprises, the Senior Credit Facility Administrative Agent, and the Senior Credit Facility Lenders from time to time party thereto.

US 5090234v.57

164.　"**_Senior Credit Facility Administrative Agent_**" means Cantor Fitzgerald Securities in its capacity as the administrative agent under the Senior Credit Facility and any successor thereto.

165.　"**_Senior Credit Facility Claim_**" means any Claim against the Debtors on account of the Senior Credit Facility.

166.　"**_Senior Credit Facility Deficiency Claim_**" means any deficiency Claim arising on account of the Senior Credit Facility.

167.　"**_Senior Credit Facility Lenders_**" means each lender under the Senior Credit Facility.

168.　"**_Servicer_**" means an agent or other authorized representative of a group of holders of Claims or Interests identified in writing by such group of holders of Claims or Interests to the Debtors and the Distribution Agent.

169.　"**_Solicitation Agent_**" means Donlin, Recano & Company, Inc., the notice, claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases by Bankruptcy Court order.

170.　"**_Total Commitments_**" has meaning given such term in Article IV.D of the Plan.

171.　"**_Unclaimed Distribution_**" means any distribution under the Plan on account of an Allowed Claim or Allowed Interest to a holder that has not within 180 days of the date of such distribution: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' or Reorganized Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

172.　"**_Unexpired Lease_**" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

173.　"**_Unimpaired_**" is used to describe a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

174.　"**_Unsecured Convenience Class Claim_**" means, collectively:  (a) any Unsecured Claim (including prepetition accrued interest) in the amount of $1,000 or less; or (b) any General Unsecured Claim (including prepetition accrued interest) in an amount in excess of $1,000 that the holder thereof, pursuant to such holder's timely filed ballot or such other election accepted by the Debtor prior to the Effective Date, elects to have reduced to the amount of $1,000 and to be treated as a Class 8 Unsecured Convenience Class Claim.

175.　"**_Warrant Tranche 1_**" means warrants equal to an aggregate of 7.0% of the Reorganized Knight Interests (subject to dilution from the MIP Equity) with a maturity of five (5) years and an equity strike price equal to $120.0 million divided by the number of shares of equity interests in Reorganized Holdings outstanding on the Effective Date.

17

176.    "***Warrant Tranche 2***" means warrants equal to an aggregate of 6.0% of the Reorganized Knight Interests (subject to dilution from the MIP Equity) with a maturity of five (5) years and an equity strike price equal to $175.0 million divided by the number of shares of equity interests in Reorganized Holdings outstanding on the Effective Date.

B.    *Rules of Interpretation*

For purposes of the Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (i) references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (j) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (k) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (l) the Reorganized Debtors shall include Reorganized Knight as and where appropriate; (m) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; and (n) any immaterial effectuating provisions may be interpreted by the Debtors (with the consent of the Majority Consenting Lenders) or the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

C.    *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.    *Governing Law*

US 5090234v.57

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided, however*, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

E.    *Reference to Monetary Figures*

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

F.    *Reference to the Debtors or the Reorganized Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.    *Controlling Document*

In the event of an inconsistency between the Plan, the RSA, and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the Plan shall control. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II
## ADMINISTRATIVE, PROFESSIONAL AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Claims, Priority Tax Claims, and DIP Financing Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III of the Plan.

A.    *Administrative Claims*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors, and Majority Consenting Lenders, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Claims, DIP Financing Claims, holders of Allowed Administrative Claims who are not required to file applications for allowance under section 503(b)(1)(D) of the Bankruptcy Code, and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the

US 5090234v.57

Effective Date, no later than thirty (30) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Reorganized Debtors, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Except for Professional Claims and DIP Financing Claims, and unless previously filed, requests for payment of Administrative Claims must be filed and served on the Reorganized Debtors no later than the Administrative Claim Bar Date pursuant to the procedures specified in the Confirmation Order and the Notice of the Occurrence of the Effective Date. Objections to such requests must be Filed and served on the Reorganized Debtors and the requesting party by the later of (1) ninety (90) days after the Effective Date and (2) ninety (90) days after the Filing of the applicable request for payment of the Administrative Claims, if applicable. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with a Final Order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to file and serve a request for such payment of such Administrative Claims that do not file and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Reorganized Debtors or any action by the Bankruptcy Court.

B.     *Professional Claims*

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. The Reorganized Debtors shall pay Professional Claims in Cash in the amount the Bankruptcy Court allows from the Professional Fee Escrow Account, which the Reorganized Debtors will establish for the Professionals and fund with Cash equal to the Professional Fee Amount on the Effective Date.

From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

US 5090234v.57

C.    *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

D.    *DIP Financing Claims*

Except to the extent that a holder of an Allowed DIP Financing Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed DIP Financing Claim (subject to the last sentence of this paragraph), on the Effective Date, each such Allowed DIP Financing Claim shall be paid in full in Cash equal to the Allowed amount of such Claim or indefeasibly satisfied by an in-kind exchange on a dollar-for-dollar basis for Additional New First Lien Term Loans under the New First Lien Facility and all commitments under the DIP Financing Agreement shall terminate. To the extent not already applied in accordance with any Final Order authorizing the DIP Financing, the DIP Financing Lenders shall be entitled to indefeasibly apply and retain any remaining expense deposits against accrued fees and expenses under the DIP Financing. For the avoidance of doubt, the DIP Financing Claims shall be Allowed in an aggregate principal amount with respect to drawn amounts under the DIP Financing (plus any unpaid accrued interest and unpaid fees, expenses and other obligations under the DIP Financing Agreement as of the Effective Date). Upon the indefeasible payment or satisfaction in full of the DIP Financing Claims (other than any DIP Financing Claims based on the Debtors' contingent obligations under the DIP Financing Agreement for which no claim has been made) in accordance with the terms of this Plan, on the Effective Date all Liens and security interests granted to secure such obligations shall be terminated and of no further force and effect. The Debtors' contingent or unliquidated obligations under the DIP Financing Agreement, to the extent not indefeasibly paid in full in Cash on the Effective Date or otherwise satisfied by the Debtors in a manner acceptable to the DIP Financing Administrative Agent, any affected DIP Financing Lender, or any other holder of a DIP Financing Claim, as applicable, shall survive the Effective Date and shall not be released or discharged pursuant to the Plan or Confirmation Order, notwithstanding any provision hereof or thereof to the contrary (including with respect to all fees, expenses and disbursements of the DIP Financing Agent and the DIP Financing Lenders, in each case, that have accrued and are unpaid as of such date and are required to be paid under or pursuant to the applicable DIP Financing Order (including the fees and out-of-pocket expenses incurred by Deloitte Tax LLP, Intrepid Financial Partners, McGlinchey Stafford PLLC, Shipman & Goodwin LLP, and Vinson & Elkins LLP).

Immediately after the later of (1) the Effective Date and (2) the date on which such fees, expenses or disbursements would be required to be paid under the terms of the applicable DIP Financing Order or the RSA, the Reorganized Debtors shall pay all fees, expenses and disbursements of (a) the Senior Credit Facility Administrative Agent, (b) the DIP Financing Agent, and (c) the Consenting Lenders, in each case, that have accrued and are unpaid as of such date and are required to be paid under or pursuant to the applicable DIP Financing Order or the RSA

21

(including the fees and out-of-pocket expenses incurred by Deloitte Tax LLP, Intrepid Financial Partners, McGlinchey Stafford PLLC, Shipman & Goodwin LLP, and Vinson & Elkins LLP). The Debtors' obligation to reimburse the Senior Credit Facility Administrative Agent, the Consenting Lenders, the DIP Financing Agent, and the DIP Financing Lenders under the DIP Financing Agreement, the DIP Financing Order, and/or the RSA for all fees, expenses, and disbursements, (including the fees and out-of-pocket expenses incurred by Deloitte Tax LLP, Intrepid Financial Partners, McGlinchey Stafford PLLC, Shipman & Goodwin LLP, and Vinson & Elkins LLP) to the extent not indefeasibly paid in full in Cash on the Effective Date or otherwise satisfied by the Debtors in a manner acceptable to the DIP Financing Agent, the Consenting Lenders, the DIP Financing Agent, and the DIP Financing Lenders, as applicable, shall survive the Effective Date and shall not be released or discharged pursuant to the Plan or Confirmation Order, notwithstanding any provision hereof or thereof to the contrary.

## ARTICLE III
## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

A.     *Classification of Claims and Interests*

This Plan constitutes a separate Plan proposed by each Debtor. Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

Below is a chart assigning each Class a number for purposes of identifying each separate Class.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | JPM Commercial Loan Claims | Impaired | Entitled to Vote |
| 4 | JPM Consumer Loan Claims | Impaired | Entitled to Vote |
| 5 | Iberia Loan Claims | Impaired | Entitled to Vote |
| 6 | Secured Senior Credit Facility Claims | Impaired | Entitled to Vote |
| 7 | Mineral Contractor Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

US 5090234v.57

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 8 | Unsecured Convenience Class Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 9 | General Unsecured Claims | Impaired | Entitled to Vote |
| 10 | Debtor Intercompany Claims and Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| 11 | Debtor Interests | Impaired | Entitled to Vote |
| 12 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.     *Treatment of Classes of Claims and Interests*

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different and less favorable treatment is agreed to by: (a) the Debtors; (b) the Holder of such Allowed Claim or Allowed Interest, as applicable; and (c) the Majority Consenting Lenders. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1.     Class 1 — Other Secured Claims

(a)     *Classification*: Class 1 consists of any Other Secured Claims against any Debtor.

(b)     *Treatment*: Each Holder of an Allowed Class 1 Claim shall receive as determined by the Debtors or the Reorganized Debtors, as applicable, with the consent of the Majority Consenting Lenders:

(i)     the collateral securing its Allowed Class 1 Claim;

(ii)     Reinstatement of its Allowed Class 1 Claim;

(iii)     payment in full of its Allowed Class 1 Claim on the Distribution Date;

(iv)     with respect to Secured Tax Claims, such treatment that renders such Claim as Unimpaired and meets the requirements of section 1129(a)(9)(D) of the Bankruptcy Code; or

(v)     such other treatment rendering its Allowed Class 1 Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)     *Voting*: Class 1 is Unimpaired under the Plan. Holders of Allowed Class 1 Claims are conclusively presumed to have accepted the Plan under

23

section 1126(f) of the Bankruptcy Code. Holders of Allowed Class 1 Claims are not entitled to vote to accept or reject the Plan.

2. Class 2 — Other Priority Claims

(a) *Classification*: Class 2 consists of any Other Priority Claims against any Debtor.

(b) *Treatment*: Each Holder of an Allowed Class 2 Claim shall receive either: (i) Cash equal to the full amount of its Allowed Class 2 Claim, (ii) payments over time as permitted under Section 1129(a)(9) of the Bankruptcy Code, or (iii) such other less favorable treatment as may otherwise be agreed with the Debtors and the Majority Consenting Lenders.

(c) *Voting*: Class 2 is Unimpaired under the Plan. Holders of Allowed Class 2 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Class 2 Claims are not entitled to vote to accept or reject the Plan.

3. Class 3 — JPM Commercial Loans Claims

(a) *Classification*: Class 3 consists of all JPM Commercial Loans Claims.

(b) *Allowance*: On the Effective Date, Class 3 Claims shall be Allowed in the aggregate principal amount of $5,205,058.84 *plus* (a) all accrued interest unpaid as of August 8, 2017 thereon at the non-default rate in the amount of $269,767.71[2], (b) unpaid fees and expenses as of the Petition Date in accordance with the terms and conditions under the JPM Commercial Loans, (c) any unpaid interest accruing after August 8, 2017 through the Effective Date, *inclusive*, on the principal amount at the non-default rate(s) and (d) any unpaid (reasonable) attorney fees, costs, expenses and fees, as allowed by Section 506(b) of the Bankruptcy Code, and all in accordance with the terms and conditions under the JPM Commercial Loans. Certain amounts that would otherwise be included as part of the JPM Commercial Loans Claims may be paid prior to, or immediately after, the Effective Date pursuant to the Final DIP Order and/or additional adequate protection ordered by the Court and may cause a reduction in the aggregate amount of the JPM Commercial Loans Claims.

(c) *Treatment*: The JPM Commercial Loan Claims shall be modified, amended, and restated as described in Article IV, Section D, paragraph a, below. In the event the sale of the Seaside Collateral closes prior to the Effective Date, the proceeds of such sale (net of all customary closing costs) shall be applied to the repayment of the JPM Consumer Loans Claims with any excess proceeds to be applied to the JPM Commercial Loans Claims to the extent all such Claims are secured by valid, perfected, and non-

---

[2] NTD: Amounts being confirmed

24

avoidable Liens on such property or proceeds. Treatment of the JPM Commercial Loans shall include retention of all existing valid, perfected, and non-avoidable Liens and security interests that secured the JPM Commercial Loans prior to the Petition Date (except with respect to the Seaside Collateral, if sold). As holder of the JPM Commercial Loan Claims as against Leasing, JPM shall retain its second lien mortgage affecting the Seaside Collateral except as described in Article IV.D.a of the Plan below. Reorganized Holdings shall reinstate the unsecured guaranty in favor of JPM that relates to the JPM Commercial Loans.

(d) *Voting*: Class 3 is Impaired under the Plan. Holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Plan.

4. Class 4 — JPM Consumer Loans Claims

(a) *Classification*: Class 4 consists of all JPM Consumer Loans Claims.

(b) *Allowance*: On the Effective Date, Class 4 Claims shall be Allowed in the aggregate principal amount of (i) $3,246,803 with respect to JPM Consumer Loan 1, and (ii) $113,761 with respect to JPM Consumer Loan 2, *plus* any unpaid accrued interest thereon at the non-default rate and unpaid fees and expenses as of the Petition Date in accordance with the terms and conditions under the respective JPM Consumer Loans.

(c) *Treatment*: In the event the sale of the Seaside Collateral closes prior to the Effective Date, the proceeds of such sale (net of all customary closing costs) shall be applied to the repayment of the JPM Consumer Loans Claims with any excess proceeds to be applied to the JPM Commercial Loans Claims to the extent such Claims are secured by valid, perfected, and non-avoidable Liens on such property or proceeds. On the Effective Date, Holders of JPM Consumer Loans Claims not otherwise reduced or repaid shall receive (i) the JPM Takeback Consumer Loans in satisfaction of the JPM Consumer Loans Claims on a dollar-for-dollar basis, which (ii) JPM Takeback Consumer Loans shall retain the existing valid, perfected, and non-avoidable Liens and security interests that secured the JPM Consumer Loans prior to the Petition Date (except with respect to the Seaside Collateral, if sold).

Notwithstanding the foregoing, in the event the JPM Consumer Loan 2 is determined not to be secured by a Lien on the Seaside Collateral or any other property of Leasing, the portion of the JPM Consumer Loan Claim relating such loan shall be treated as a General Unsecured Claim.

(d) *Voting*: Class 4 is Impaired under the Plan. Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.

US 5090234v.57

5. Class 5 — Iberia Loan Claims

    (a) *Classification*: Class 5 consists of all Iberia Loan Claims.

    (b) *Allowance*: On the Effective Date, Class 5 Claims shall be Allowed in the aggregate principal amount of $11,102,503 *plus* unpaid accrued interest thereon at the non-default rate in an amount of $1,042,662 through September 28, 2017, *plus* unpaid fees and expenses as of the Petition Date in the amount of $79,603, in each case in accordance with the terms and conditions under the Iberia Loans. The Class 5 Claims are secured by valid and perfected mortgages, deeds of trust and security interests in the Iberia Collateral. In addition, the Class 5 Claims are fully secured and include post-petition interest, reasonable costs and attorneys fees, subject to approval of the Bankruptcy Court.

    (c) *Treatment*: In the event the sale of the Frierson Collateral or the Oklahoma City Collateral closes prior to the Effective Date, the proceeds of such sale or sales (net of all customary closing costs) shall be applied to the repayment of the Iberia Loan Claims. On the Effective Date, Holders of Iberia Loan Claims to the extent not otherwise reduced or repaid shall receive (i) the Iberia Takeback Loans in satisfaction of the Iberia Loan Claims on a dollar-for-dollar basis, which (ii) Iberia Takeback Loans shall retain the existing valid, perfected, and non-avoidable liens and security interests that secured the Iberia Loans prior to the Petition Date (except with respect to the Frierson Collateral or the Oklahoma City Collateral, if sold), and (iii) in satisfaction of the unsecured Holdings guaranty of the Iberia Loans, Reorganized Holdings shall reinstate the guaranty in favor of the Iberia Takeback Loans.

    (d) *Voting*: Class 5 is Impaired under the Plan. Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.

6. Class 6 — Secured Senior Credit Facility Claims

    (a) *Classification*: Class 6 consists of all Secured Senior Credit Facility Claims.

    (b) *Allowance*: The Senior Credit Facility Claims shall be Allowed in an aggregate amount of $203,716,465, plus any unpaid fees and expenses as of the Petition Date, in each case in accordance with the terms and conditions under the Senior Credit Facility.

    (c) *Treatment*: On the Effective Date, each Holder of an Allowed Class 6 Claim shall receive its Pro Rata share of the First Lien Distribution.

    (d) *Voting*: Class 6 is Impaired under the Plan. Holders of Allowed Class 6 Claims are entitled to vote to accept or reject the Plan.

US 5090234v.57

7.   Class 7 — Mineral Contractor Claims

   (a)   *Classification*: Class 7 consists of any Mineral Contractor Claims against any Debtor.

   (b)   *Treatment*: On the Effective Date, except to the extent that a Holder of an Allowed Mineral Contractor Claim agrees to a less favorable treatment, to the extent not already satisfied pursuant to a prior order of the Bankruptcy Court, each Holder of an Allowed Class 7 Claim shall receive Cash in an amount equal to such Allowed Class 7 Claim on the later of:

      (i)    the date such claim is deemed Allowed in accordance with the Plan; or

      (ii)   the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Class 7 Claim.

   (c)   *Voting*: Class 7 is Unimpaired under the Plan.  Holders of Claims in Class 7 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

8.   Class 8 — Unsecured Convenience Class Claims

   (a)   *Classification*: Class 8 consists of any Unsecured Convenience Class Claims against any Debtor.

   (b)   *Treatment*: Except to the extent that a Holder of an Allowed Unsecured Convenience Class Claim agrees to less favorable treatment, each Holder of an Allowed Class 8 Claim shall receive Cash in an amount equal to the lesser of (1) their Allowed Claim, and (2) $1,000, paid on or after the Effective Date on the later of:

      (i)    the date such claim is deemed Allowed in accordance with the Plan; or

      (ii)   the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Class 8 Claim.

   (c)   *Voting*: Class 8 is Unimpaired under the Plan. Holders of Claims in Class 8 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

US 5090234v.57

9.    Class 9 — General Unsecured Claims

   (a)    *Classification*: Class 9 consists of any General Unsecured Claims against
          any Debtor.

   (b)    *Treatment*: Except to the extent that a holder of an Allowed General
          Unsecured Claim agrees to a less favorable treatment, each Holder of an
          Allowed General Unsecured Claim shall receive their Pro Rata share from
          the General Unsecured Claims Fund.  The Holders of the Senior Credit
          Facility Deficiency Claim shall forego their right to receive any recovery
          from the General Unsecured Claims Fund on account of their Senior Credit
          Facility Deficiency Claim, and the Senior Credit Facility Deficiency Claim
          shall be excluded from the calculation of the Pro Rata recoveries of the other
          Holders of Class 9 Claims from the General Unsecured Claims Fund.  For
          the avoidance of doubt, the Senior Credit Facility Deficiency Claim shall
          be classified as a General Unsecured Claim and the Holders thereof shall be
          permitted to vote such Claims to accept or reject the Plan.

   (c)    *Voting*: Class 9 is Impaired under the Plan. Holders of Allowed Class 9
          Claims are entitled to vote to accept or reject the Plan.

10.    Class 10 — Debtor Intercompany Claims and Intercompany Interests

   (a)    *Classification*: Class 10 consists of any Intercompany Claims or
          Intercompany Interests.

   (b)    *Treatment*: Each Allowed Class 10 Claim shall be, at the option and with
          the consent of the Majority Consenting Lenders, either:

          (i)    Reinstated; or

          (ii)   canceled and released without any distribution on account of such
                 Claims or Interests,

          in each case (i) and (ii) in a tax and business efficient manner acceptable to
          the Debtors with the consent of the Majority Consenting Lenders.

   (c)    *Voting*: Holders of Allowed Class 10 Claims are conclusively deemed to
          have accepted the Plan pursuant to section 1126(f) or rejected the Plan
          pursuant to section 1126(g) of the Bankruptcy Code, depending on the
          treatment selected above. Holders of Allowed Class 10 Claims are not
          entitled to vote to accept or reject the Plan.

11.    Class 11 — Debtor Interests

   (a)    *Classification*: Class 11 consists of all Interests in the Debtors other than
          Intercompany Interests.

28

US 5090234v.57

(b) *Treatment*: As set forth and in the manner described in the Description of Transaction Steps, a portion of Class 11 Interests in Reorganized Holdings will be retained by the Consenting Holders while all other Class 11 Interests shall be deemed transferred and contributed to Reorganized Knight on the Effective Date. The Consenting Holders will receive the Comprehensive Settlement Distribution as consideration for the Comprehensive Settlement including in exchange for (i) the payment of the Consenting Holders Cash Contribution to the Debtors, (ii) their deemed transfer and contribution of certain of the Class 11 Interests to Reorganized Knight, (iii) their retention of a portion of their Interests in Reorganized Holdings, and (iv) any elections and the tax positions taken by the Consenting Holders as may be necessary for the preservation of the cumulative tax attributes and benefits of (ii) and (iii) to the Reorganized Debtors.

(c) *Voting*: Class 11 is Impaired under the Plan. Holders of Allowed Class 11 Claims are entitled to vote to accept or reject the Plan including for the purpose of accepting the Comprehensive Settlement.

12. <u>Class 12 — Section 510(b) Claims</u>

(a) *Classification*: Class 12 consists of any Section 510(b) Claims against any Debtor.

(b) *Treatment*: Class 12 Claims, if any, will be discharged, canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Allowed Section 510(b) Claims will not receive any distribution on account of such Allowed Section 510(b) Claims.

(c) *Voting*: Class 12 is Impaired under the Plan. Holders (if any) of Allowed Class 12 Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders (if any) of Allowed Class 12 Claims are not entitled to vote to accept or reject the Plan.

C. *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

D. *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E. *Voting Classes; Presumed Acceptance by Non-Voting Classes*

US 5090234v.57

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court to deem the Plan accepted by the holders of such Claims or Interests in such Class; *provided, however*, that such Class will not be used as the sole impaired accepting class pursuant to Bankruptcy Code section 1129(a)(10).

F.      *Intercompany Interests*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience, for the ultimate benefit of the holders of Reorganized Knight Interests, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the holders of Allowed Claims.

G.      *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

H.      *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors, with the consent of the Majority Consenting Lenders, reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE IV
## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

A.      *General Settlement of Claims and Interests*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and is within the range of

US 5090234v.57

reasonableness. Subject to Article VI of the Plan, all distributions made to holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

B.     *Comprehensive Settlement*

The Debtors and the other Restructuring Support Parties have mutually agreed to a comprehensive resolution of issues and disputes between and among the Debtors and the other Restructuring Support Parties (the "***Comprehensive Settlement***") which shall include:

1.     The payment of the Consenting Holders Cash Contribution to the Debtors;

2.     Entry into the New Leases;

3.     Consummation of the Related Party Transaction Resolutions;

4.     The mutual grant of the Releases included in Article VIII.B and Article VIII.C of the Plan;

5.     The other compromises, settlements, and covenants embodied in the Plan and the RSA;

6.     In order to preserve the tax attributes and benefits of the Debtors for the Reorganized Debtors, to the extent required in the Description of Transaction Steps, the retention by the Consenting Holders of a portion of their Class 11 Interests in Holdings, and the contribution and transfer of all other Interests in Holdings, Leasing, and Enterprises held by the Consenting Holders to Reorganized Knight as set forth and in the manner described in the Description of Transaction Steps; and

7.     The provision of the Comprehensive Settlement Distribution to the Consenting Holders.

The Comprehensive Settlement is subject in all respects to the consummation of all the Restructuring Transactions on terms satisfactory to the Restructuring Support Parties. By voting to accept the Comprehensive Settlement Distribution, Consenting Holders will grant the Releases provided for in Article VIII.C of the Plan and may not opt out of granting such Releases. No portion of the Comprehensive Settlement Distribution shall be made to or retained by Non-Consenting Holders.

The Debtors shall estimate the Consenting Holders Cash Contribution within two (2) Business Days after the entry of the Confirmation Order. The Consenting Holders shall pay the Consenting Holders Cash Contribution to the Debtors in the amount of such estimate within four (4) Business Days of the entry of the Confirmation Order. In the event that the Effective Date does not occur, the Consenting Holders Cash Contribution shall be returned by the Debtors to the Consenting Holders. On the Effective Date, the final amount of the Consenting Holders Cash Contribution shall be calculated and agreed upon by the Debtors, the Consenting Holders, and the Majority Consenting Lenders, and Cash shall be contributed by or returned to the Consenting Holders, as applicable, such that the Debtors shall have received the correct and actual amount of the Consenting Holders Cash Contribution as of the Effective Date.

US 5090234v.57

C.    *Restructuring Transactions*

On or after the Confirmation Date, or as soon as reasonably practicable thereafter, the Debtors may take all actions to become effective on the Effective Date  as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, consistent with and pursuant to the terms and conditions of the RSA and the Description of Transaction Steps (together, the "***Restructuring Transactions***") including: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, contribution, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan, including such transactions as are acceptable to the Majority Consenting Lenders to cause Reorganized Knight and Reorganized Holdings to become the parent companies of all of the Reorganized Debtors and to effect (i) the issuance and distribution of the Reorganized Knight Interests, Equity Warrants, and any equity or equity-linked interests associated with the Management Incentive Plan and execution and delivery of the New Organizational Documents, (ii) the execution and delivery of the New First Lien Facility Documents and all drawings of the New First Lien Term Loans, and (iii) the guaranty of the New First Lien Facility by the Reorganized Debtors; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, contribution, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution or other certificates or documentation for other transactions as described in clause (a), pursuant to applicable state law; (d) the execution and delivery of the New Mortgage Loans and the New Leases, as applicable; (e) the funding of the General Unsecured Claims Fund, and payment of amounts due for all Allowed Mineral Contractor Claims and Allowed Unsecured Convenience Claims pursuant to the Plan; (f) the securing of all third party approvals, including those required by any government or regulatory authority to effect the Restructuring Transactions; and (g) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Restructuring Transactions.

Each of the matters provided for by the Plan involving the corporate structure of Reorganized Knight and/or the Debtors or corporate or related actions to be taken by or required of Reorganized Knight, the Reorganized Debtors, and/or the Consenting Holders whether taken prior to or as of the Effective Date, shall be deemed authorized and approved in all respects without the need for any further action and without any further action by Reorganized Knight, the Debtors, the Reorganized Debtors, or the Consenting Holders, as applicable. Such actions may include, among others, the following: (a) the adoption and filing of the New Organizational Documents; (b) the selection of the directors, managers, and officers for Reorganized Knight and the Reorganized Debtors, including the appointment of the Reorganized Holdings Board; (c) the authorization, issuance, and distribution of Reorganized Knight Interests, Equity Warrants, and any equity or equity-linked interests associated with the Management Incentive Plan; (d) the assumption of Executory Contracts or Unexpired Leases; (e) the entry into the New First Lien Facility and the execution and delivery of the New First Lien Facility Documents; (f) the payment of the Consenting Holders Cash Contribution to the Debtors; and (g) the adoption of the

US 5090234v.57

Management Incentive Plan, at the discretion of (and on terms and conditions determined by) the Reorganized Holdings Board in accordance with the RSA.

D.    *Sources of Consideration for Plan Distributions and the Comprehensive Settlement Distribution*

    1.    <u>Cash on Hand</u>

On the Effective Date, the Reorganized Debtors will deposit the General Unsecured Claims Fund in a segregated account. The Reorganized Debtors shall use Cash on hand, the Consenting Holders Cash Contribution, and the Initial Restructuring Claim Advance to fund the General Unsecured Claims Fund and to make distributions to certain holders of Claims entitled to receive Cash including distributions to holders of Allowed Mineral Contractor Claims and Unsecured Convenience Class Claims on the respective distribution date for such Claims.

    2.    <u>Property Sale Proceeds</u>

The Debtors shall continue to market for sale the Seaside Collateral, the Oklahoma City Collateral, and the Frierson Collateral. If the sale of any property is effected prior to the Effective Date, such sale shall be consummated pursuant to section 363 of the Bankruptcy Code and the proceeds of such sale applied in accordance with Article III.B.3 and Article III.B.4 of this Plan.

    3.    <u>New First Lien Facility</u>

On the Effective Date, the Reorganized Debtors shall enter into the New First Lien Facility Documents forms of which shall be included in the Plan Supplement are summarized below. The indebtedness and obligations under the New First Lien Facility shall be the joint and several obligations of Reorganized Holdings and all other Reorganized Debtors, fully secured by substantially all property (personal, real, or mixed) of the Reorganized Debtors on a first priority basis (except with respect to property securing (i) *ad valorem* taxes for the current year, and (ii) the Iberia Takeback Loans and the JPM Takeback Loans, and on those properties the New First Lien Facility shall be secured by a second priority Lien), and comprised of the Initial New First Lien Term Loan and the Additional New First Lien Term Loans issued from time to time thereunder. The New First Lien Term Loans will have a maturity date of five (5) years from the Effective Date and will bear interest at an annual rate of 8.5%. At Reorganized Holdings' option, until the date falling three (3) years after the Effective Date, the payment of interest on the New First Lien Term Loans may be satisfied through the payment-in-kind issuance of Additional New First Lien Term Loans. No amortization of the New First Lien Term Loans shall be required until after the date falling three (3) years from the Effective Date. The New First Lien Term Loans shall include such additional terms and conditions as required by the Majority Consenting Lenders (with the consent of the Debtors).

    **(a)    <u>Initial New First Lien Term Loan</u>**

On the Effective Date, pursuant to the New First Lien Facility Agreement (a substantially final form of which shall be attached to the Plan Supplement) and consistent with Article III.B, Lenders under the Senior Credit Facility shall receive Pro Rata on account of their Allowed Secured Senior Credit Facility Claims, a New

First Lien Term Loan (the "***Initial New First Lien Term Loan***") in an amount equal to the New First Lien Term Loans Initial Amount. The Initial New First Lien Term Loan shall be an amendment and restatement (but without novation) of the Senior Credit Facility Claims in an amount equal to the New First Lien Term Loans Initial Amount.

**(b)      Additional New First Lien Term Loans**

In addition to the New First Lien Term Loans Initial Amount, the Senior Credit Facility Lenders shall provide commitments to extend Additional New First Lien Term Loans of up to $30.0 million in aggregate principal amount (the "***Total Commitments***") to fund the (x) Initial Restructuring Claims Advance and the Secondary Restructuring Claims Advance as needed to provide for payment of Allowed Claims and other amounts that are required to be paid under the Plan and (y) after the Effective Date, the working capital needs of Reorganized Holdings and the other Reorganized Debtors.

The Additional New First Lien Term Loans shall (a) have maturity and interest payment terms identical to those of the Initial New First Lien Term Loan, and (b) require each draw of Additional New First Lien Term Loans to be in an amount of at least $1.0 million and funded after three (3) Business Days' notice (except as otherwise provided below).

On the Effective Date, the Reorganized Debtors will be permitted to draw an initial amount (the "***Initial Restructuring Claim Advance***") of up to $18.0 million aggregate principal amount (the "***Restructuring Claims Advance Cap***") of Additional New First Lien Term Loans, to be used as follows:

   (i)      to repay in full the DIP Financing;

   (ii)     to pay in full any and all Allowed and outstanding property and *ad valorem* taxes for years prior to 2017;

   (iii)    to pay any and all Allowed Other Secured Claims that are payable in Cash in accordance with Art. III.B.1 of the Plan;

   (iv)     to pay professional fees and costs associated with the Restructuring Transactions including (but not limited to) professional fees and costs payable under the Plan on account of the JPM Loan Claims, and the Iberia Loan Claims, and Allowed professional fees and costs of the Debtors and any official committee appointed in the Chapter 11 Cases;

   (v)      to pay Allowed Administrative Claims (including, without limitation, claims under Bankruptcy Code § 503(b)(9)), Priority Tax Claims, and Other Priority Claims;

US 5090234v.57

<ol type="i" start="6">
<li>to pay Allowed Claims required to be paid as a condition to assumption of executory contracts and unexpired leases under Bankruptcy Code § 365 and Allowed Mineral Contractor Claims; and</li>
<li>to fund (1) payments under the Plan on account of the Unsecured Convenience Class Claims, and (2) the General Unsecured Claims Fund.</li>
</ol>

Subsequent to the Initial Restructuring Claim Advance, the Reorganized Debtors may pay Allowed Claims of the types described in (iii) through (vi) of the definition of Initial Restructuring Claims Advance either by (I) subsequent advances of Additional New First Lien Term Loans, or (II) free cash flow (any and all of which payments made from free cash flow shall be deemed to be an advance of Additional New First Lien Term Loans on a dollar-for-dollar basis *except* as provided in Article IV.D.3(c))(collectively, all advances or deemed advances under clauses (I) and (II) of this Article IV.D.3(b), the "***Secondary Restructuring Claims Advance***") *and* to the extent a Secondary Restructuring Claim Advance is funded by an advance under clause (I) of this Article IV.D.3(b), the Total Commitments shall be reduced on a dollar-for-dollar basis.

**(c)    Incremental Tax Costs Gross-Up**

Each payment of any Allowed Priority Tax Claim for sales, use, or excise taxes for any tax years prior to 2017, whether paid out of :

> (i) advances under the New First Lien Facility (including to refinance advances under the DIP Financing to fund such sales, use, or excise tax payments), or

> (ii) the Debtors' or Reorganized Debtors' free cash flow,

shall:

> (x) in the case of clause (i) above, upon  the advance of such funds under the New First Lien Facility, and

> (y) in the case of clause (ii) above, upon the later of the Effective Date and the date of such payment,

(I) be deemed an advance of Additional New First Lien Term Loans in an amount equal to the Incremental Tax Costs Gross-Up (for the avoidance of doubt, no payment shall be counted as satisfying more than one of clauses (i) and (ii)); and

(II) to the extent such payment is funded by an advance under clause (i) of this Article IV.D.3(c) reduce the Total Commitments on a dollar-for-dollar basis.

35

US 5090234v.57

**Continuance of Liens**. Notwithstanding anything to the contrary herein, all Liens securing the Senior Credit Facility Claims (i) are unaltered by this Plan, (ii) shall remain attached to the property of the Reorganized Debtors and their existing and former Affiliates after the Effective Date to the same extent such Liens were attached to the property of the Debtors and their existing and former Affiliates prior to the Effective Date, and (iii) shall be deemed assigned on the Effective Date to the New First Lien Facility Agent for the benefit of the New First Lien Facility Lenders to continue to secure the joint and several obligations of the Reorganized Debtors under New First Lien Facility Documents.

**Payment of Expenses**.  Additionally, on the Effective Date, the Reorganized Debtors shall be permitted to draw upon the New First Lien Facility to pay all fees, expenses and disbursements of (a) the Senior Credit Facility Administrative Agent, (b) the DIP Financing Agent, and (c) the Consenting Lenders, in each case, that have accrued and are unpaid as of such date (including the fees and out-of-pocket expenses incurred by Deloitte Tax LLP, Intrepid Financial Partners, McGlinchey Stafford PLLC, Shipman & Goodwin LLP, and Vinson & Elkins LLP).

**New First Lien Facility Approval**.  Confirmation of this Plan shall be deemed to constitute approval of the New First Lien Facility, the New First Lien Facility Documents, and, subject to the occurrence of the Effective Date, authorization for the Reorganized Debtors to enter into and perform their joint and several obligations in connection with the New First Lien Facility.

**Legal Effect of Confirmation on the New First Lien Facility**.  On the Effective Date, the New First Lien Facility Documents shall constitute legal, valid, binding, and authorized joint and several obligations of the Reorganized Debtors, enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the New First Lien Facility Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law. The Reorganized Knight Organizational Documents shall authorize the execution and delivery of the New First Lien Facility Documents, the incurrence of the Initial New First Lien Term Loan, and the issuance of the Additional New First Lien Term Loans and no further corporate or limited liability company action shall be required nor any further action by the holders of Claims or Interests or the Debtors or the Reorganized Debtors be required.    On the Effective Date, all of the Liens and security interests retained and to be granted in accordance with the New First Lien Facility Documents (a) shall be legal, binding and enforceable Liens on, and security interests in, the Collateral granted thereunder in accordance with the terms of the New First Lien Facility Documents, (b) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the New First Lien Facility Documents, and (c) except as expressly permitted in the New First Lien Facility Documents, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the Entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable

US 5090234v.57

state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of this Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

4.   Issuance and Distribution of the Reorganized Knight Interests

Except as set forth in and in the manner described in the Description of Transaction Steps, all existing Interests in the Debtors shall be contributed to Reorganized Knight or Reorganized Holdings on the Effective Date such that Reorganized Knight and Reorganized Holdings shall be the parent companies of all other Reorganized Debtors and their respective subsidiaries (if any). On the Effective Date, Reorganized Knight and Reorganized Holdings shall issue 100% of the Reorganized Knight Interests as set forth in and in the manner described in the Description of Transaction Steps pursuant to the Plan and to give effect to the First Lien Distribution and the Comprehensive Settlement Distribution. The issuance of the Reorganized Knight Interests shall be authorized without the need for any further corporate or limited liability company action and without any further action by the holders of Claims or Interests or the Debtors or the Reorganized Debtors, as applicable. The Reorganized Knight Organizational Documents shall authorize the issuance and distribution on the Effective Date of the Reorganized Knight Interests to the Distribution Agent for the benefit of Entities entitled to receive the Reorganized Knight Interests on the Effective Date pursuant to the Plan. All of the Reorganized Knight Interests issued under the Plan shall be duly authorized and validly issued, and the holders of Allowed Secured Senior Credit Facility Claims that will receive Reorganized Knight Interests shall execute the Reorganized Knight Interests Documents immediately prior to receiving their respective distributions of Reorganized Knight Interests under the Plan.

Any such Senior Credit Facility Lender or Consenting Holder who does not execute one or all of the Reorganized Knight Interests Documents shall be automatically deemed to have executed and accepted the terms of each such unexecuted Reorganized Knight Interests Document (in such Person's capacity as an equity Interest holder of Reorganized Knight, Reorganized Holdings, Reorganized Leasing, or Reorganized Enterprises) and to be party thereto without further action. Each of the Reorganized Knight Interests Documents shall be adopted on the Effective Date and shall be deemed to be valid, binding and enforceable in accordance with its terms, and each holder of Reorganized Knight Interests shall be bound thereby, in each case without the need for execution by any party thereto other than Clearlake Capital Partners IV Finance, L.P. Each distribution and issuance of the Reorganized Knight Interests under the Plan or the Comprehensive Settlement Distribution shall be in the manner and as described in the Description of the Transaction Steps and governed by the terms and conditions set forth in the Plan applicable to such distribution, issuance, or settlement and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance. From and after the Effective Date, Reorganized Knight Interests will be subject to dilution by the MIP Equity as well as future issuances of Reorganized Knight Interests.

US 5090234v.57

On the Effective Date, none of the Reorganized Knight Interests will be registered under the Securities Act or listed on a national securities exchange, the Reorganized Debtors will not be reporting companies under the Exchange Act, the Reorganized Debtors shall not be required to and will not file reports with the Securities and Exchange Commission or any other entity or party, and the Reorganized Debtors shall not be required to file monthly operating reports with the Bankruptcy Court after the Effective Date. In order to prevent the Reorganized Debtors from becoming subject to the reporting requirements of the Exchange Act, except in connection with a public offering, the New Organizational Documents may impose certain trading restrictions, and the Reorganized Knight Interests may be subject to certain transfer and/or other restrictions pursuant to the New Organizational Documents designed to maintain the Reorganized Debtors as private, non-reporting companies.

5.    The Equity Warrants

On the Effective Date, Reorganized Holdings shall issue the Equity Warrants to the Distribution Agent who shall execute the Comprehensive Settlement Distribution by delivering the Equity Warrants to the Consenting Holders as consideration for the Comprehensive Settlement. The terms of the Equity Warrants shall be substantially similar in all respects with those provided in the RSA. For the avoidance of doubt, the Equity Warrants shall consist of (i) Warrant Tranche 1, comprised of warrants exercisable into Reorganized Knight Interests constituting 7.0% of the total equity of Reorganized Holdings (calculated as of the Effective Date and subject to dilution on account of the MIP Equity and future equity issuances), at an initial strike price implying a total equity value of the Reorganized Debtors of $120 million, and (ii) Warrant Tranche 2, comprised of warrants exercisable into Reorganized Knight Interests constituting 6.0% of the total equity of Reorganized Holdings (calculated as of the Effective Date and subject to dilution on account of the MIP Equity and future equity issuances), at an initial strike price implying a total equity value of the Reorganized Debtors of $175 million. The strike price on each of the Equity Warrants shall be increased or decreased to reflect appropriate adjustments on account of any capital contributions made to (whether in Cash, cash equivalents, promissory obligations, or the fair market value of other property which is contributed or deemed to have been contributed) or distributions or dividends, other than redemptions, from (whether in Cash, cash equivalents, promissory obligations, or the fair market value of other property which is distributed or deemed to have been distributed, but excluding payment of any yield on any preferred equity securities) Reorganized Holdings from and after the Effective Date. Each class of the Equity Warrants shall have a five (5) year tenor, contain customary change of control exercise rights, and otherwise be exercisable without cash payment at the implied values set forth above, provided that the holder of such Equity Warrants shall be entitled only to participation in the portion of the proceeds in excess of the applicable strike price. For the avoidance of doubt, the Consenting Holders entitled to receive the Equity Warrants hereunder shall not be attributed any ownership of Reorganized Knight Interests on account of such Equity Warrants for the purposes of calculating any future dividends, distributions, or participation pursuant to any New Organizational Documents until the exercise of the Equity Warrants in accordance with their terms. For the further avoidance of doubt, the holders of the Equity Warrants shall, upon exercise of the Equity Warrants, execute or be deemed to have executed and accepted, and be bound by, the Reorganized Knight Interests Documents.

E.    *Management Incentive Plan*

US 5090234v.57

After the Effective Date, the Reorganized Debtors, including Reorganized Holdings, shall implement the Management Incentive Plan on terms approved by the directors of the Reorganized Holdings Board, but which shall provide for the award of up to 6.0% of the equity interests of Reorganized Knight to management (the "***MIP Equity***").  The form, vesting, and allocation of the MIP Equity  along with the other terms of the Management Incentive Plan will be negotiated in good faith and determined by the Reorganized Holdings Board following the Effective Date in consultation with the Chairman Emeritus.  For the avoidance of doubt, eligible parties under the Management Incentive Plan shall, in their capacity as such, neither execute, nor be deemed to have executed and accepted the terms of, the Reorganized Knight Interests Documents as of the Effective Date. For the further avoidance of doubt, such eligible parties shall, upon allocation and full vesting of the MIP Equity, execute or be deemed to have executed and accepted, and be bound by, the Reorganized Knight Interests Documents.

F.     *New Mortgage Loans*

On or prior to the Effective Date, certain of the Reorganized Debtors shall enter into the Iberia Takeback Loans and the JPM Takeback Loans (collectively, the "***New Mortgage Loans***"). On the Effective Date, the New Mortgage Loans shall constitute legal, valid, binding, and authorized obligations of each applicable Reorganized Debtor party thereto, enforceable in accordance with their terms certain of which are summarized below:

   a.   <u>JPM Commercial Loans</u>

   To the extent the JPM Commercial Loans Claims are not repaid from the net proceeds from the sale of the Seaside Collateral, on the Effective Date, the JPM Commercial Loans Claims shall be modified, amended, and restated, but without novation, to include: (i) a bullet (final) maturity five years from the Effective Date, (ii) no provision for amortization during the first 12 months following the Effective Date, (iii) provision for monthly amortization payments in cash commencing in the 13th month following the Effective Date in an amount equal to then-remaining outstanding principal balance of the JPM Commercial Loans divided by 108, (iv) payment in cash on a monthly basis (1) during the first twenty-four (24) calendar months following the Effective Date, interest at a rate equal to the non-default rate of interest currently set forth in the JPM Commercial Loans (*i.e.*, a variable rate equal to the one month LIBOR Rate plus 2.5%), and (2)  beginning in the twenty-fifth (25th) calendar month following the Effective Date, interest at a variable rate equal to the one month LIBOR Rate plus 3.5%, (v) provision for a default premium of 200 basis points, (vi) a provision for full retention of all Liens on all unsold property that currently secures the JPM Commercial Loans, (vii) authorization for the grant of a second priority Lien in favor of the New First Lien Facility on the JPM Equipment Collateral and the Headquarters Collateral, subject to a customary intercreditor agreement providing for market-standard "silent" second lien treatment, and (viii) inclusion of such other terms and conditions acceptable to the Debtors, the Majority Consenting Lenders and JPM.  The first interest payment to be made by Reorganized Enterprises to JPM after the Effective Date pursuant to the JPM  Commercial Loans shall be due on the thirtieth (30th) day after the Effective Date and each subsequent interest payment (and amortization of principal

39

once begun) payable to JPM shall be due on the same day of each month thereafter. Late fees will be owed by, due from, and payable by Reorganized Enterprises with respect to interest payments and amortization of principal on the JPM Commercial Loans after the Effective Date on the same terms as provided for late fees in the JPM Commercial Loans.

Under the JPM Commercial Loans, JPM, Reorganized Enterprises, and Reorganized Holdings shall covenant as follows:

    i.    that the Seaside Collateral shall continue to be listed for sale by ResortQuest Real Estate;

    ii.    that if the Seaside Collateral is not under contract to sell on or before February 8, 2018, Reorganized Enterprises will consult with JPM regarding a potential new listing agent and listing price;

    iii.    that Reorganized Leasing shall use all commercially reasonable efforts to sell the Seaside Collateral at a fair market value and shall keep JPM reasonably informed of the sale process, including delivery to JPM of any written offers received;

    iv.    that any actual sales proceeds (net of customary closing costs and amounts paid on any senior secured loan or property tax claim) received by Reorganized Leasing for the sale of the Seaside Collateral shall be used to pay down the then-outstanding principal balance of the JPM Commercial Loans;

    v.    that JPM shall not withhold its consent to a sale of the Seaside Collateral that provides for payment in full of the senior secured loan on such property;

    vi.    that JPM shall execute commercially reasonable release of Lien documentation on the Seaside Collateral in connection with the closing of any such sale of the Seaside Collateral, such release documentation to be prepared and recorded at the sole expense of Reorganized Leasing;

    vii.    that JPM consents to the transfer of Debtor equity interests to the Reorganized Debtors under the Plan; and

    viii.    that JPM waives any default or event of default under the JPM Commercial Loans existing as of the Effective Date, including, without limitation, any default arising as a result of the filing of the Chapter 11 Cases.

After the Effective Date, to the extent that property securing the JPM Commercial Loans (including the Seaside Collateral) is sold and the principal balance of the JPM Commercial Loans is reduced by the actual sale proceeds therefrom, the amortization payments on the JPM Commercial Loans shall be recalculated such that the amortization payments will be made on the then-remaining outstanding principal balance of the JPM Commercial Loans divided by 108.

US 5090234v.57

In no event shall the JPM Commercial Loans be treated as, or deemed to be, a novation of the JPM Commercial Loan such that the superior lien priority position of JPM as to the Headquarters Collateral or the JPM Equipment Collateral is impaired. JPM shall retain as security for the JPM Commercial Loans all of its rights as a holder of perfected Liens (not subject to voidability) on the Seaside Collateral, the JPM Equipment Collateral, and the Headquarters Collateral to the fullest extent set forth in the JPM Commercial Loans inclusive of the mortgages and security agreements and with respect to the Lien priorities applicable to such property. The substantially final form of the JPM Commercial Loans, as modified, amended, and restated, shall be filed as part of the Plan Supplement.

b. JPM Takeback Consumer Loans

To the extent the JPM Consumer Loans Claims are not repaid from the net proceeds from the sale of the Seaside Collateral, on the Effective Date, holders of the JPM Consumer Loans Claims shall receive JPM Takeback Consumer Loans which shall: (i) have a bullet (final) maturity five years from the Effective Date, (ii) provide for no amortization during the first 12 months following the Effective Date, (iii) provide for monthly amortization payments commencing in the 13th month following the Effective Date in an amount equal to then-remaining outstanding principal balance of the JPM Takeback Consumer Loans divided by 108, (iv) pay an interest rate equal to the non-default rate of interest currently set forth in the JPM Consumer Loans on a monthly basis, (v) be secured by continuing Liens on all unsold property that currently secures the JPM Consumer Loans, and (vi) have such other terms and conditions acceptable to the Debtors and the Majority Consenting Lenders. After the Effective Date, to the extent that property securing the JPM Takeback Consumer Loans is sold and the principal balance of the JPM Takeback Consumer Loans is reduced by the actual sale proceeds therefrom, the amortization payments shall be recalculated such that the amortization payments will be made on the then-remaining outstanding principal balance of the JPM Takeback Consumer Loans divided by 108.

The Plan may be amended at or prior to the hearing set by the Bankruptcy Court to consider approval of the Disclosure Statement to reflect any alternative agreement regarding the JPM Takeback Consumer Loans' terms and conditions reached between the Debtors, JPM, and the Majority Consenting Lenders. Failing an agreement on a consensual treatment, the Debtors reserve their right to seek confirmation of the Plan (including with respect to the issuance of the JPM Takeback Consumer Loans in satisfaction of the JPM Consumer Loans Claims) pursuant to section 1129 (b)(2)(A)(i)(I) and (II) of the Bankruptcy Code on the terms outlined above or such other terms as approved by the Bankruptcy Court which treatment must be satisfactory to the Majority Consenting Lenders.

c. Iberia Takeback Loans

From the Petition Date, interest shall accrue on the Iberia Loans at the Wall Street Journal Prime Rate plus 200 basis points (the "*Iberia Interest Rate*"), calculated

US 5090234v.57

and paid in cash on a monthly basis. Upon the Effective Date, any interest that has accrued or been capitalized at an interest rate greater than the Iberia Interest Rate prior to the Effective Date shall be recalculated based on the Iberia Interest Rate and any excess waived.

To the extent the Iberia Loan Claims are not repaid from the net proceeds from the sale of the Frierson Collateral and/or the Oklahoma City Collateral, on the Effective Date, holders of the Iberia Loan Claims shall receive Iberia Takeback Loans which shall: (i) have a bullet (final) maturity on October 1, 2022; (ii) provide for no amortization prior to September 30, 2018, (iii) provide for monthly amortization payments in cash commencing in October of 2018 in an amount equal to then-remaining outstanding principal balance of the Iberia Takeback Loans divided by 108, (iv) pay in cash an interest rate equal to the Iberia Interest Rate on a monthly basis, (v) be secured by continuing Liens on the Iberia Collateral, and (vi) have such other terms and conditions acceptable to the Debtors, the Majority Consenting Lenders, and Iberia. The first interest payment to be made by Reorganized Leasing to Iberia after the Effective Date pursuant to the Iberia Takeback Loans shall be due on the earlier of the last day or the thirtieth (30th) day of the following month and each subsequent interest payment (and amortization of principal once begun) payable to Iberia shall be due on the earlier of the last day or the thirtieth (30th) day of each month.

Under the Iberia Takeback Loans, Iberia, Reorganized Leasing, and Reorganized Holdings shall covenant, *inter alia*, as follows:

   i.   that Reorganized Leasing shall continue to list for sale the following collateral securing the Iberia Takeback Loans: (1) the Oklahoma City Collateral and (2) the Frierson Collateral (collectively, the "***Non-Core Properties***");

   ii.  that listing price of the Non-Core Properties shall not be greater than an agreed upon percentage[3] of the appraised value of the Non-Core Properties;

   iii. that Reorganized Leasing shall continue to use all commercially reasonable efforts to sell the Non-Core Properties at a fair market value and shall keep Iberia reasonably informed of the sale process, including promptly delivering to Iberia any and all written offers received and providing Iberia with reasonable access to persons involved in the sale process with Reorganized Leasing and any brokerage firms utilized by Reorganized Leasing;

   iv.  that should Reorganized Leasing receive any bona fide purchase offers from a third party for any of the Non-Core Properties which exceed the sum of an agreed upon percentage of such property's appraised value *plus* any property taxes due for tax periods prior to the year of sale, Reorganized

---

[3] The "agreed upon percentages" shall be incorporated into the final form of the Iberia Takeback Loans included in the Plan Supplement subject to redaction as may be necessary.

US 5090234v.57

Leasing shall use all commercially reasonable efforts to enter into definitive documentation to consummate the sale of such Non-Core Property as soon as reasonably practicable;

v. that should Reorganized Leasing receive any bona fide purchase offers from a third party for any of the Non-Core Properties which less than an agreed upon percentage of such property's appraised value, the Reorganized Leasing and Iberia shall agree on the course of action to with respect to the sale of such property;

vi. that any actual sales proceeds (net of customary closing costs) received by Reorganized Leasing for the sale of any of the Non-Core Properties or any other collateral securing the Iberia Takeback Loans shall be used to pay down the then-outstanding principal balance of the Iberia Takeback Loans;

vii. that Iberia shall execute commercially reasonable partial release of Lien documentation in connection with the closing of any such sale of collateral securing the Iberia Takeback Loans;

viii. that Iberia consents to the transfer of Debtor equity interests to the Reorganized Debtors under the Plan; and

ix. that Iberia waives any default or event of default under the Iberia Loans existing as of the Effective Date, including, without limitation, any default arising as a result of the filing of the Chapter 11 Cases.

To the extent that property securing the Iberia Takeback Loans is sold prior to September 30, 2018 and the principal balance of the Iberia Takeback Loans is reduced by the actual sale proceeds therefrom, the amortization payments shall be recalculated such that the amortization payments will be made on the then-remaining outstanding principal balance of the Iberia Takeback Loans divided by 108. For the avoidance of doubt, any sale of the Non-Core Properties prior to the Effective Date shall be subject to approval of the Bankruptcy Court. The substantially final form of the Iberia Takeback Loans shall be filed as part of the Plan Supplement.

G. *Professional Fees and Expenses*

Upon the occurrence of the Effective Date, the Reorganized Debtors pay all fees, expenses and disbursements of (a) the Senior Credit Facility Administrative Agent, (b) the DIP Financing Agent, and (c) the Consenting Lenders, in each case, that have accrued and are unpaid as of such date (including the fees and out-of-pocket expenses incurred by Deloitte Tax LLP, Intrepid Financial Partners, McGlinchey Stafford PLLC, Shipman & Goodwin LLP, and Vinson & Elkins LLP).

H. *Exemption from Registration Requirements*

US 5090234v.57

The offering, issuance, and distribution of any Securities, including the Reorganized Knight Interests, any of the Equity Warrants, and the equity and equity-linked interests associated with the Management Incentive Plan, pursuant to the Plan will be exempt from the registration requirements of section 5 of the Securities Act pursuant to section 1145 of the Bankruptcy Code or any other available exemption from registration under the Securities Act, as applicable, as further described below. Pursuant to section 1145 of the Bankruptcy Code, the Reorganized Knight Interests and Equity Warrants issued under the Plan will be freely transferable under the Securities Act by the recipients thereof, subject to: (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act and compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; and (b) any other applicable regulatory approval.

Equity and equity-linked interests associated with the Management Incentive Plan will be issued pursuant to an exemption from registration under the Securities Act.

I.      *Corporate Existence*

Except as otherwise provided in the Plan (including, for the avoidance of doubt, the Restructuring Transactions), each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and by-laws (or other formation documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

J.      *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan (including, for the avoidance of doubt, the Restructuring Transactions) or in the Confirmation Order, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, other than with respect to all Non-Vesting Assets, all property in each Debtor's Estate, all Causes of Action, and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances (except for Liens, Claims, charges, or other encumbrances securing the New First Lien Facility, the JPM Takeback Loans, the Iberia Takeback Loans, or Other Secured Claims reinstated pursuant and only as provided in the Plan). On and after the Effective Date, except as otherwise provided herein, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

The Plan shall constitute a motion to abandon the Non-Vesting Assets. The Confirmation Order shall (i) constitute an authorization of the Bankruptcy Court to abandon the Non-Vesting

44

Assets under section 554 of the Bankruptcy Code and (ii) an order of abandonment of the Non-Vesting Assets as of the Effective Date. The Non-Vesting Assets shall not vest in any of the Reorganized Debtors, and the Reorganized Debtors shall have no ownership interest in the Non-Vesting Assets.

K.      *Cancelation of Notes, Instruments, Certificates, and Other Documents*

On the Effective Date, except to the extent otherwise provided herein or in the Description of Transaction Steps, all notes, instruments, certificates, plans, agreements and other documents evidencing Claims or Interests, shall be canceled and the obligations thereunder (or in any way related thereto) of the Debtors or, the Reorganized Debtors, shall be deemed satisfied in full, discharged, canceled, and of no further effect; *provided, however*, that notwithstanding Confirmation or the occurrence of the Effective Date, any credit document or agreement that governs the rights of the holder of a Claim or Interest shall continue in effect solely for purposes of allowing holders of Allowed Claims to receive distributions under the Plan.

Pursuant to the Comprehensive Settlement, any Claims (the following, collectively, "***Old Equity Claims***") arising from the retention of Interests or the cancelation or rejection of any prepetition organizational documents, shareholders' agreement or investor rights agreement, and any related-party consulting or management services agreements, shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and holders of Old Equity Claims shall not pursue and shall not receive any distribution on account of such Claims other than the Comprehensive Settlement Distribution.

L.      *New Organizational Documents*

On the Effective Date, the Debtors shall enter into new or amended formation, organizational, and constituent documents (including those formation, organizational, and constituent documents relating to limited partnerships and limited liability companies) as may be necessary to effectuate the transactions contemplated by the Plan and shall be in form and substance acceptable to the Debtors and the Majority Consenting Lenders. The Debtors' respective formation, organizational, and constituent documents (including those formation, organizational, and constituent documents relating to limited partnerships and limited liability companies) shall be amended, canceled, or otherwise modified as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code. The New Organizational Documents shall be included as exhibits to the Plan Supplement and shall, among other things: (a) be in form and substance acceptable to the Debtors and Majority Consenting Lenders; and (b) authorize the issuance of the Reorganized Knight Interests. After the Effective Date, each of Reorganized Knight and each of the Reorganized Debtors may amend and restate its formation, organizational, and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of such documents.

M.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, Reorganized Knight and the Reorganized Debtors, and the officers and members of the boards of directors and managers thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other

45

agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the New First Lien Facility Documents, the New Organizational Documents, the Equity Warrant Agreement, any equity or equity-linked interests issued pursuant to the Management Incentive Plan and/or to the holders of Reorganized Knight Interests, and any other Securities issued pursuant to the Plan in the name of and on behalf of Reorganized Knight and/or the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

For the avoidance of doubt, the Chief Restructuring Officer (as defined in the *Interim Order Authorizing the Debtors to Employ and Retain (I) Opportune LLP as Crisis Managers and (II) Gary L. Pittman as Chief Restructuring Officer and Certain Additional Personnel, in Each Instance Nunc Pro Tunc to the Petition Date* [Docket No. 64] or any subsequent order of the Bankruptcy Court), or any successor named or appointed by the Board of Directors of the Debtors or the Reorganized Debtors, is authorized to take all measures (including execution of all definitive documentation) necessary to effectuate the Plan and the Restructuring Transactions without further notice to or action, approval, or order of the Bankruptcy Court and without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

N.    *Section 1146(a) Exemption*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors; (b) the Restructuring Transactions; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; (e) the grant of collateral as security for any or all of the New First Lien Facility; or (f) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

O.    *Directors and Officers*

US 5090234v.57

The Debtors' senior officers as of the Petition Date shall continue to occupy such roles until and upon the Effective Date. On the Effective Date, the Reorganized Holdings Board will consist of five members. The members of the Reorganized Holdings Board shall be determined in accordance with the terms of the RSA and designated as follows: (i) the Majority Consenting Lenders are entitled to designate four (4) directors; and (ii) the Consenting Holders shall designate one (1) board director, mutually agreeable to the Majority Consenting Lenders and the Consenting Holders, who shall serve as a director on the Reorganized Holdings Board and Chairman Emeritus thereof (the "*Chairman Emeritus*").  In addition, the Consenting Holders may designate one (1) individual, mutually agreeable to the Majority Consenting Lenders and the Consenting Holders, to serve as an observer on the Reorganized Holdings Board.  The members of the board of directors of any Reorganized Debtor subsidiary of Reorganized Knight shall be acceptable to the Reorganized Holdings Board. From and after the Effective Date, each director, officer, or manager of Reorganized Knight and the Reorganized Debtors shall serve pursuant to the terms of their respective charters and bylaws or other formation and constituent documents, and applicable laws of Reorganized Knight's and/or the respective Reorganized Debtor's jurisdiction of formation. In accordance with section 1129(a)(5) of the Bankruptcy Code, the identities of the members of the Reorganized Holdings Board and any Person proposed to serve as an officer or manager of Reorganized Knight shall be disclosed in the Plan Supplement at or before the Confirmation Hearing.

P.      *Incentive Plans and Employee and Retiree Benefits*

Except as otherwise provided herein, on and after the Effective Date, subject to any Final Order and, without limiting any authority provided to the Reorganized Holdings Board under the Debtors' respective formation and constituent documents, the Reorganized Debtors shall with the consent of the Majority Consenting Lenders: (a) amend, adopt, assume, and/or honor in the ordinary course of business, any contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for, among other things, compensation, including any incentive plans (other than any equity incentive plan (if any) or other prepetition senior management incentive plan, which in each case shall be replaced by the Management Incentive Plan), health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the directors, officers, and employees of any of the Debtors who served in such capacity from and after the Petition Date; and (b) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Petition Date and not otherwise paid pursuant to a Bankruptcy Court order. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

Q.      *Preservation of Rights of Action*

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Disclosure Statement or the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of

US 5090234v.57

the Effective Date, other than the Causes of Action released by the Debtors and the Estates pursuant to the releases and exculpations contained in the Plan, which shall be deemed released and waived by the Debtors, the Estates, and the Reorganized Debtors as of the Effective Date, except for Causes of Action brought as counterclaims or defenses to claims asserted against the Reorganized Debtors and their Affiliates.

The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against it. The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided herein**. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain the Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor or an Estate may hold against any Entity shall vest in the Reorganized Debtors. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

Notwithstanding anything herein to the contrary, Preference Actions shall be preserved solely for purposes of setoff or recoupment against a Claim that would otherwise be Allowed, and in no event shall Preference Actions be pursued for purposes of seeking affirmative recoveries. Notwithstanding anything herein to the contrary, for the avoidance of doubt, the Reorganized Debtors shall not pursue any Preference Actions other than for purposes of setoff or recoupment against a Claim that would otherwise be Allowed.

# ARTICLE V
# TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A. *Assumption/Rejection of Executory Contracts and Unexpired Leases*

US 5090234v.57

Except as otherwise provided herein or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, the Plan shall serve as a motion under Sections 365 and 1123(b)(2) of the Bankruptcy Code to reject Executory Contracts and Unexpired Leases, and all Executory Contract and Unexpired Leases shall be rejected without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date *except* for any Executory Contract or Unexpired Lease that (1) previously has been assumed or rejected by the Debtors in the Chapter 11 Cases; (2) is specifically identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; or (3) is the subject of a separate motion to assume or reject such Executory Contract or Unexpired Lease filed by the Debtors under section 365 of the Bankruptcy Code that is pending as of the Effective Date. The Confirmation Order will constitute an order of the Bankruptcy Court approving the rejection of all Executory Contracts and Unexpired Leases to the extent provided above.

The Schedule of Assumed Executory Contracts and Unexpired Leases shall designate whether each of the Executory Contracts and Unexpired Leases to be assumed shall be (1) assumed by the Reorganized Debtor corresponding to the Debtor counterparty to such Executory Contract or Unexpired Lease or (2) assumed and assigned to a different Reorganized Debtor or a newly-formed Affiliate entity of such Reorganized Debtor. The Schedule of Assumed Executory Contracts and Unexpired Leases shall also include the proposed Cure payment sufficient to satisfy section 365(b) with respect to each assumed Executory Contract or Unexpired Lease. The Confirmation Order will constitute an order of the Bankruptcy Court approving all above-described assumptions and assignments and the Cures included in the Schedule of Assumed Executory Contracts and Unexpired Leases or otherwise provided for in the Plan or the Confirmation Order. For the avoidance of doubt, the Debtors shall seek to assume or reject Executory Contracts and Unexpired Leases in consultation with and with the consent of the Majority Consenting Lenders.

Except as otherwise provided herein or agreed to by the Debtors, the Majority Consenting Lenders, and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute a Bankruptcy Order approving the assumptions or rejections of the Executory Contracts and Unexpired Leases as provided for in the Plan or as identified in the Schedule of Assumed Executory Contracts and Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume or reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order and shall be effective *nunc pro tunc* to the Effective Date *provided, however,* that any Claims for rejection damages shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.B of the Plan. Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A or by any order of the Bankruptcy Court, which has not been assigned

49

to a third party prior to the Confirmation Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law. Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases identified in this Article V and in the Plan Supplement at any time prior to the Effective Date.

B.     *Cure of Defaults and Objections to Cure and Assumption*

The Debtors or the Reorganized Debtors, as applicable, shall pay Cures, if any, on the Effective Date or as soon as reasonably practicable thereafter. If the non-Debtor party to the executory contract or unexpired lease objects to the Cure scheduled in the Plan Supplement or in a separate notice of assumption, by the Reorganized Debtors for such executory contract or unexpired lease, such executory contract or unexpired lease non-Debtor party must file an objection with the Bankruptcy Court to such Cure on or before five (5) days prior to the Confirmation Hearing Date. **Any such request and/or objection that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court**. Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the Cure; *provided, however*, that nothing herein shall prevent the Reorganized Debtors from paying any Cure despite the failure of the relevant counterparty to file such request for payment of such Cure. The Reorganized Debtors also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court. **Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption**.

If there is any dispute regarding any Cure, the ability of the Reorganized Debtors or any assignee to provide "*adequate assurance of future performance*" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of such Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

To the extent that any dispute with respect to the amount of any Cures regarding any default with respect to any Executory Contract and Unexpired Lease to be assumed pursuant to the Plan is resolved or determined, including by entry of an order by the Bankruptcy Court, in a manner that is not acceptable to the Debtors or Reorganized Debtors, as applicable, the Debtors or Reorganized Debtors, as applicable, may reject the applicable Executory Contract or Unexpired Lease within twenty (20) days after such resolution or determination by filing and serving upon the counterparty to such Executory Contract or Unexpired Lease a notice of rejection. Upon service of such notice of rejection, such Executory Contract or Unexpired Lease shall be deemed to be rejected without the need for further action or an order from the Bankruptcy Court, and such counterparty may thereafter file a Proof of Claim in the manner set forth in Article V.G of the Plan.

US 5090234v.57

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any and all Proofs of Claim (but, for the avoidance of doubt, not including Cures) based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court**.

C.     *Contracts, Intercompany Contracts, and Leases Entered Into After the Petition Date*

Contracts, Intercompany Contracts, and leases entered into after the Petition Date by any Debtor and any Executory Contracts and Unexpired Leases assumed by any Debtor may be performed by the applicable Reorganized Debtor in the ordinary course of business.

D.     *Insurance Policies*

Each of the Debtors' Insurance Policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan or the Plan Supplement, on the Effective Date, (1) the Debtors shall be deemed to have assumed all Insurance Policies and any agreements, documents, and instruments relating to coverage of all insured Claims, and (2) such Insurance Policies and any agreements, documents, or instruments related thereto shall vest in the Reorganized Debtors.

E.     *Rejection*

In the event that the rejection of an Executory Contract or Unexpired Lease hereunder results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor or the Reorganized Debtor, or their respective Estate, properties or interests in property, unless a Proof of Claim is filed with the Bankruptcy Court no later than thirty (30) days after the later of (i) the Effective Date or (ii) the effective date of the rejection of such Executory Contract or Unexpired Lease, as set forth in an order of the Bankruptcy Court. Except as expressly provided otherwise in this Plan, the Confirmation Order shall constitute the Bankruptcy Court's approval of the rejection of all the Executory Contracts and Unexpired Leases not included in the Schedule of Assumed Executory Contracts and Unexpired Leases. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.B of the Plan.

F.     *Non-Occurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

US 5090234v.57

G.    *Reservation of Rights*

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors or the Reorganized Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Distributions on Account of Claims and Interests*

Except as otherwise provided herein, a Final Order, or as otherwise agreed to by the Debtors or the Reorganized Debtors, as the case may be, and the holder of the applicable Claim or Interest, on the first Distribution Date, the Distribution Agent shall make the distributions under the Plan on account of Claims and Interests Allowed on the Effective Date or as soon as practicable thereafter, subject to the Reorganized Debtors' right to object to Claims and Interests; *provided, however*, that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims shall be paid in accordance with Article II.C of the Plan.

The Distribution Agent or the Reorganized Debtors, as applicable, shall make payments and Distributions to each Holder of a Disputed Claim that has become an Allowed Claim in accordance with the provisions of the Plan governing the class of Claims to which such Holder belongs. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing all or part of any Disputed Claim becomes a Final Order, the Disbursing Agent or the Reorganized Debtors, as applicable, shall distribute to the Holder of such Claim the Distribution (if any) that would have been made to such Holder on the Distribution Date had such Allowed Claim been allowed on the applicable Distribution Date. After a Disputed Claim is Allowed by Final Order or otherwise resolved, the excess Cash or other property, if any, that was reserved on account of such Disputed Claim, if any, shall become property of the Reorganized Debtors, as applicable.

B.    *Rights and Powers of Distribution Agent*

1.    Powers of the Distribution Agent

The Distribution Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

52

2.      Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Distribution Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims made by the Distribution Agent shall be paid in Cash by the Reorganized Debtors in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court.

C.      *Special Rules for Distributions to Holders of Disputed Claims and Interests*

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties: (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim or Interest until all such disputes in connection with such Disputed Claim or Interest have been resolved by settlement or Final Order; and (b) any Entity that holds both an Allowed Claim or Interest and a Disputed Claim or Interest shall not receive any distribution on the Allowed Claim or Interest unless and until all objections to the Disputed Claim or Interest have been resolved by settlement or Final Order or the Claims or Interests have been Allowed or expunged. Any dividends or other distributions arising from property distributed to holders of Allowed Claims or Interests, as applicable, in a Class and paid to such holders under the Plan shall also be paid, in the applicable amounts, to any holder of a Disputed Claim or Interest, as applicable, in such Class that becomes an Allowed Claim or Interest after the date or dates that such dividends or other distributions were earlier paid to holders of Allowed Claims or Interests in such Class.

D.      *Delivery of Distributions*

1.      Record Date for Distributions to Holders of Non-Publicly Traded Securities

On the Distribution Record Date, the Claims Register shall be closed and the Distribution Agent shall be authorized and entitled to recognize only those record holders, if any, listed on the Claims Register as of the close of business on the Distribution Record Date. Notwithstanding the foregoing, if a Claim or Interest, other than one based on a publicly traded Certificate, is transferred and the Debtors have been notified in writing of such transfer less than ten (10) days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee (rather than the transferor) only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

Notwithstanding anything to the contrary herein, no holder of a Claim may elect to have such Claim treated as an Unsecured Convenience Class Claim unless such election is delivered to the Debtors via a timely submitted ballot or such other election agreed to by the Debtors prior to the Effective Date.

2.      Distribution Process

The Distribution Agent shall make all distributions required under the Plan, except that distributions to holders of Allowed Claims or Interests governed by a separate agreement and administered by a Servicer shall be deposited with the appropriate Servicer, at which time such distributions shall be deemed complete, and the Servicer shall deliver such distributions in

53

accordance with the Plan and the terms of the governing agreement. Except as otherwise provided herein, and notwithstanding any authority to the contrary, distributions to holders of Allowed Claims, including Claims that become Allowed after the Effective Date, shall be made to holders of record as of the Distribution Record Date by the Distribution Agent or a Servicer, as appropriate: (1) to the address of such holder as set forth in the books and records of the applicable Debtor (or if the Debtors have been notified in writing, on or before the date that is ten (10) days before the Distribution Record Date, of a change of address, to the changed address); (2) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, if no address exists in the Debtors' books and records, no Proof of Claim has been filed and the Distribution Agent has not received a written notice of a change of address on or before the date that is ten (10) days before the Distribution Record Date; or (3) on any counsel that has appeared in the Chapter 11 Cases on the holder's behalf. The Debtors, the Reorganized Debtors, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

3.    Accrual of Dividends and Other Rights

For purposes of determining the accrual of distributions or other rights after the Effective Date, the Reorganized Knight Interests shall be deemed distributed as of the Effective Date regardless of the date on which it is actually issued, dated, authenticated, or distributed; *provided, however*, neither Reorganized Knight nor the Reorganized Debtors shall pay any such distributions or distribute such other rights, if any, until after distributions of the Reorganized Knight Interests actually take place.

4.    Compliance Matters

In connection with the Plan, to the extent applicable, Reorganized Knight and the Reorganized Debtors and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, Reorganized Knight and the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. Reorganized Knight and the Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

5.    Foreign Currency Exchange Rate

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

US 5090234v.57

6. <u>Fractional, Undeliverable, and Unclaimed Distributions</u>

    (a)    <u>Fractional Distributions</u>. Whenever any distribution of fractional shares or units of the Reorganized Knight Interests would otherwise be required pursuant to the Plan, the actual distribution shall reflect a rounding of such fraction to the nearest share (up or down), with half shares or less being rounded down. Whenever any payment of Cash of a fraction of a dollar pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

    (b)    <u>Undeliverable Distributions</u>. If any distribution to a holder of an Allowed Claim or Interest is returned to the Distribution Agent as undeliverable, no further distributions shall be made to such holder unless and until the Distribution Agent is notified in writing of such holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such holder on the next Distribution Date. Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtors or is canceled pursuant to Article VI.D.6.(c) of the Plan, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

    (c)    <u>Reversion</u>. Any distribution under the Plan that is an Unclaimed Distribution for a period of six months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the applicable Reorganized Debtor and, to the extent such Unclaimed Distribution is a Reorganized Knight Interest, shall be deemed canceled. Upon such revesting, the Claim or Interest of any holder or its successors with respect to such property shall be canceled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary.

7.    <u>Surrender of Canceled Instruments or Securities</u>

    On the Effective Date and except as otherwise provided in the Plan, each holder of a Certificate shall be deemed to have surrendered such Certificate to the Distribution Agent or a Servicer (to the extent the relevant Claim or Interest is governed by an agreement and administered by a Servicer). Such Certificate shall be canceled solely with respect to the Debtors, and such cancelation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate. Notwithstanding the foregoing paragraph, this Article VI.D.7 shall not apply to any Claims and Interests Reinstated pursuant to the terms of the Plan.

US 5090234v.57

E.    *Claims Paid or Payable by Third Parties*

  1.    Claims Paid by Third Parties

A Claim shall be reduced in full, and such Claim shall be disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor. To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such holder shall repay, return or deliver any distribution held by or transferred to the holder to the applicable Reorganized Debtor to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

  2.    Claims Payable by Insurance Carriers

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more of the Debtors' insurers agrees to satisfy a Claim in full or in part, then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Solicitation Agent.

  3.    Applicability of Insurance Policies

Except as otherwise provided herein, distributions to holders of Allowed Claims shall be in accordance with the provisions of an applicable Insurance Policy. Except as otherwise expressly provided herein, nothing contained in the Plan shall constitute or be deemed a waiver of any rights, defenses, or Cause of Action that the Debtors, the Reorganized Debtors, or any Entity may hold against any other Entity, including insurers under any policies of insurance.

F.    *Setoffs*

Except as otherwise expressly provided for herein, each Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such holder have not been otherwise compromised, settled, or released on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided, however,* that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such claims, rights, and Causes of Action that such Reorganized Debtor may possess against such holder. In no event shall any holder of Claims be entitled to set off any such Claim against any claim, right, or Cause of Action of the Debtor or Reorganized Debtor (as applicable), unless such holder has filed a motion with the Bankruptcy

US 5090234v.57

Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

# ARTICLE VII
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS

A. *Disputed Claims Process*

Except as otherwise provided herein, if a party files a Proof of Claim such Claim shall be Disputed unless Allowed or disallowed herein, by a Final Order, or as otherwise set forth in this Article VII of the Plan. Except as otherwise provided herein, all Proofs of Claim filed after the Bar Date shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor or their property, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court.

B. *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority: (1) to file, withdraw, or litigate to judgment, objections to Claims or Interests; (2) to settle or compromise any Disputed Claim; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises, in each case subject to the procedures provided for below in this Article VII.B.

Any settlement or compromise agreed to (i) pursuant to clause (2) of the preceding paragraph, or (ii) proposed by the Committee-Appointed Claims Dispute Representative after the First Claims Objection Deadline, shall be: (x) filed in a notice on the docket of the Bankruptcy Court; (y) following such filing, be subject to a fourteen (14) day objection period during which the Reorganized Debtors or the Committee-Appointed Claims Dispute Representative may object to such settlement or compromise; and (z) become effective upon (A) if no objection has been filed to the settlement, the date falling fifteen (15) days after the filing seeking approval upon notice to the Bankruptcy Court of no objection, and (B) otherwise, upon the entry by the Bankruptcy Court of a Final Order approving such settlement or compromise.

The Committee-Appointed Claims Dispute Representative:

a) prior to the First Claims Objection Deadline, shall have standing to appear and be heard with respect to any (x) objection filed by the Reorganized Debtors or (y) proposed settlement or compromise agreed to by the Reorganized Debtors in accordance with this Article VII.B of the Plan;

b) after the First Claims Objection Deadline and prior to the Final Claims Objection Deadline, shall have non-exclusive authority to file objections and compromise and

US 5090234v.57

settle certain Disputed Class 9 Claims on behalf of the Holders of Class 9 Claims (subject to the above approval process);

c)  shall have no authority to settle any Disputed Claim that would result in (x) an Allowed Claim in a Class other than Class 8 or Class 9, or (y) an Administrative Claim or an Allowed Priority Tax Claim, without the consent of the Reorganized Debtors;

d)  shall have its reasonable documented fees and expenses (including the reasonable documented fees and expenses of legal counsel thereto) paid from General Unsecured Claims Fund prior to the Distribution Date of the General Unsecured Fund to Holders of Allowed Class 9 Claims; and

e)  shall have no other role or authority except as expressly and specifically provided for in this Article VII.B of the Plan.

For the avoidance of doubt, the fees and expenses of the Committee-Appointed Claims Dispute Representative (including the reasonable documented fees and expenses of legal counsel thereto) shall be payable solely from the General Unsecured Claims Fund.

For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Article IV.Q of the Plan.

C.  *Time to File Objections to Claims*

Any objections to Claims shall be filed on or before the Final Claims Objection Deadline.

D.  *No Interest*

Unless otherwise specifically provided for herein, in the Bankruptcy Code, or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

E.  *Disallowance of Claims and Interests*

All Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code;

58

and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

## ARTICLE VIII
## EFFECT OF CONFIRMATION OF THE PLAN

A.    *Discharge of Claims and Termination of Interests*

**Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.**

B.    *Releases by the Debtors*

**Notwithstanding anything contained in this Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates from any and all Causes of Action, including any derivative Claims, asserted or which could be asserted on behalf of the Debtors or the Estates, that the Debtors, the Reorganized Debtors, or their Estates (or any trustee on behalf of the Debtors, the Reorganized Debtors, or their Estates) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including management, ownership, or operation thereof), the Debtors' in  or out of court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the Senior Credit Facility, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the Plan, the DIP Financing, the New First Lien Facility, or any Restructuring**

59

Transaction, contract, instrument, release, or other Plan Transaction Document, agreement, or document created or entered into in connection with the RSA, the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the DIP Financing, the New First Lien Facility, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this Article VIII.B, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to asserting any Claim or Cause of Action released pursuant to such releases.

Without limiting the foregoing, the Confirmation Order shall include a finding that any Causes of Actions arising under, or in any way related to, the Senior Credit Facility are property of the Debtors' bankruptcy Estates, and by the terms of the release contained within this Article VIII.B such Causes of Action, if any, are released and barred from being asserted in any manner by the Debtors, the Reorganized Debtors, Reorganized Knight, any holder of Claims against the Debtors or any current or former holder of Interests in the Debtors. For the avoidance of doubt, Causes of Action against the Senior Credit Facility Administrative Agent and the Senior Credit Facility Lenders, if any, are also being released by the Releasing Parties pursuant to Article VIII.C of the Plan and such Causes of Action are not retained by, or conveyed to, any party pursuant to this Plan or any Plan Transaction Document.

C.      *Releases by Holders of Claims and Interests*

Notwithstanding anything contained in this Plan to the contrary, as of the Effective Date, for good and valuable consideration, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, whether known or unknown, existing or hereinafter arising, in law, equity, or otherwise including any derivative Claims asserted or which may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from,

US 5090234v.57

in whole or in part, the Debtors (including management, ownership, or operation thereof), the Debtors' in or out of court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the Senior Credit Facility, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the Plan, the DIP Financing, the New First Lien Facility, if applicable, or any Restructuring Transaction, contract, instrument, release, or other Plan Transaction Document, agreement, or document created or entered into in connection with the RSA, the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the DIP Financing, the New First Lien Facility, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this Article VIII.C, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to asserting any Claim or Cause of Action released pursuant to such releases.

D.    *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, any Cause of Action for any Claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA and related prepetition transactions, the Disclosure Statement, the Plan, the DIP Financing, the New First Lien Facility, or any Restructuring Transaction, contract, instrument, release or other Plan Transaction Document, agreement, or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the DIP Financing, the New First Lien Facility, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for Claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, gross negligence or willful misconduct, but in all respects such Entities shall be entitled to

61

US 5090234v.57

reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

E.     *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

F.     *Protection Against Discriminatory Treatment*

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Entity with which a Reorganized Debtor has been or is associated, solely because such Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

G.     *Recoupment*

In no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such holder actually has performed such recoupment and provided notice

US 5090234v.57

thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

H.    *Document Retention*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

I.    *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant holder of a Claim has filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

J.    *Release of Liens*

Except (a) with respect to the Liens securing the New First Lien Facility, the JPM Takeback Loans, the Iberia Takeback Loans, and the Other Secured Claims (depending on the treatment of such Claims), or (b) as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be deemed fully released, discharged, and cancelled, *provided however* that at the written request of the Debtors, the Majority Consenting Lenders, or the Reorganized Debtors, the holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall promptly execute such documents as may be reasonably requested by the Debtors, the Majority Consenting Lenders, or the Reorganized Debtors, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns.

Notwithstanding anything to the contrary herein, all Liens securing the Senior Credit Facility Claim (i) are unaltered by this Plan, (ii) shall remain attached to the property of the Reorganized Debtors and their existing and former Affiliates after the Effective Date to the same extent such Liens were attached to the property of the Debtors and their existing and former Affiliates prior to the Effective Date, and (iii) shall be deemed assigned on the Effective Date to the New First Lien Facility Agent for the benefit of the New First Lien Facility Lenders to secure the joint and several obligations of the Reorganized Debtors under New First Lien Facility Documents.

.

US 5090234v.57

# ARTICLE IX
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A. *Conditions Precedent to the Effective Date*

It shall be a condition to the occurrence of the to the Effective Date that the following conditions precedent (or conditions subsequent with respect to actions that are to be taken contemporaneously with, or immediately upon the occurrence of the Effective Date) shall have been satisfied or will be satisfied or waived pursuant to Article IX.B of the Plan:

1. the Plan and Plan Transaction Documents shall be in a form and substance consistent in all material respects with the RSA and acceptable to the Majority Consenting Lenders and, if required by the RSA, the Consenting Holders;

2. the Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance acceptable to the Debtors and the Majority Consenting Lenders and shall have become a Final Order;

3. the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and such authorizations, consents, regulatory approvals, rulings, or documents shall not be subject to unfulfilled conditions, be in full force and effect, and all applicable waiting periods shall have expired without any action having been taken by any competent authority that would restrain or prevent such transactions;

4. no court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, preventing or prohibiting the consummation of the Restructuring Transactions, the effectiveness of the Plan, the RSA or any of the definitive documentation contemplated thereby;

5. the payment in full of all invoices for reasonable and documented fees and expenses provided for in the RSA (including for the avoidance of doubt, those of the Senior Credit Facility Administrative Agent as well as those of legal counsel and the financial advisor to the Consenting Lenders), shall have been paid in Cash;

6. the RSA shall not have terminated and shall have been assumed under section 365 of the Bankruptcy Code, and be in full force and effect and shall not be (a) the subject of a pending motion to reject Executory Contracts, (b) terminated, (c) subject to a motion to terminate the RSA, or (d) if rejected or terminated, shall have been reinstated, and the Debtors shall be in compliance therewith;

7. there shall exist no material breach of any of the undertakings, representations, warranties or covenants of any party set forth in the RSA that would have a material adverse effect on the Debtors, the Reorganized Debtors, or the consummation of the Restructuring Transactions and the making effective of the Plan;

8. the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed in a manner consistent in all material respects with

US 5090234v.57

the Plan and shall be in form and substance acceptable to the Debtors and the Majority Consenting Lenders;

9.      the New Organizational Documents shall have been adopted and (where required by applicable law) filed with the applicable authorities of the relevant jurisdictions of organization and shall have become effective in accordance with such jurisdiction's corporation, limited liability company, or alternative comparable laws, as applicable;

10.      the Debtors shall have implemented the Restructuring Transactions in a manner consistent in all respects with the Plan and, without limiting any definition contained in Article I.A of the Plan or other provision of the Plan, and the forms of all definitive documentation giving effect to the Plan and the Restructuring Transactions shall be in a form acceptable to the Debtors, the Majority Consenting Lenders, and the Consenting Holders (to the extent such documentation directly and materially affected by such documentation) and will be executed prior to, or substantially contemporaneously with, the rendering effective of the Plan;

11.      the Reorganized Debtors shall have assumed their continuing Executory Contracts and Unexpired Leases on terms agreeable to the Majority Consenting Lenders or shall have rejected any non-continuing Executory Contracts and Unexpired Leases with the Majority Consenting Lenders consent;

12.      the Majority Consenting Lenders shall have reasonably determined that the aggregate amount of the Initial Restructuring Claim Advance and the Secondary Restructuring Claim Advance will not exceed the Restructuring Claims Advance Cap; and

13.      the Debtors shall have disposed of, liquidated, or wound down Knight Resources, LLC,  Knight International LLC, Knight Dutch Holdings LLC, and Knight International Acquisitions, LLC in a manner and on terms and conditions acceptable to the Majority Consenting Lenders and the Debtors.

B.      *Waiver of Conditions Precedent*

The Debtors, solely with the prior written consent of the Majority Consenting Lenders, may waive any of the conditions to the Effective Date set forth in Article IX.A of the Plan at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

C.      *Notice of Occurrence of Effective Date*

Within two (2) Business Days of the occurrence of the Effective Date, the Debtors and the Majority Consenting Lenders shall file a notice of the occurrence of the Effective Date (the "***Notice of the Occurrence of the Effective Date***") signed by counsel for the Debtors and counsel for the Majority Consenting Lenders in the record of the Bankruptcy Cases reflecting (a) that the foregoing conditions to the occurrence of the Effective Date have been satisfied or waived, and (b) that the Effective Date has occurred and specifying the date thereof.

D.      *Dissolution of the Committee*

US 5090234v.57

On the Effective Date, the Committee shall be dissolved automatically, and the respective members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; *provided* that such dissolution shall not affect the standing of Professionals for the Committee to submit and prosecute requests for payment of Professional Claims and any appeals thereof.

E.   *Effect of Non-Occurrence of Conditions to Consummation*

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of any Debtor or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity.

# ARTICLE X
# MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.   *Modification of Plan*

Effective as of the date hereof, (a) the Debtors, with the consent of the Majority Consenting Lenders, reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan before the entry of the Confirmation Order consistent with the terms set forth herein; and (b) after the entry of the Confirmation Order, the Debtors, with the consent of the Majority Consenting Lenders or the Reorganized Debtors, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, to remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein.

B.   *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.   *Withdrawal of Plan*

The Debtors, subject to and in accordance with the RSA, reserve the right to withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans. If the Debtors withdraw the Plan, or if the Confirmation Date or the Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action, (2) prejudice in any manner the rights of any Debtor or any other Entity, or (3) constitute

66

an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

## ARTICLE XI
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

7.      enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.      grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

67

US 5090234v.57

9.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

10.     hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or an Interest for amounts not timely paid pursuant to the Plan; (b) with respect to the releases, injunctions, and other provisions contained in Article VIII of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

11.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

13.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

14.     enter an order or Final Decree concluding or closing the Chapter 11 Cases;

15.     enforce all orders previously entered by the Bankruptcy Court; and

16.     hear any other matter not inconsistent with the Bankruptcy Code or applicable law.

Notwithstanding anything in this Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to any dispute or controversy under the New First Lien Facility which shall be governed by its terms.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

A.      *Immediate Binding Effect*

Subject to Article IX.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

68

B.    *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the RSA. The Debtors or the Reorganized Debtors, as applicable, and all holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Payment of Statutory Fees*

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.

D.    *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and, except for actions authorized or permitted in the Plan or deemed necessary and appropriate by the Debtors with the consent of the Majority Consenting Lenders for purposes of preparing for Consummation, the occurrence of the Effective Date. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

E.    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.    *Service of Documents*

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

| **Reorganized Debtors** | **Knight Energy Holdings, LLC** |
| | 2727 South East Evangeline Thruway |
| | Lafayette, Louisiana 70508 |
| | Attn: President |
| | |
| **Counsel to the Debtors** | **Heller, Draper, Patrick, Horn & Dabney, LLC** |
| | 650 Poydras Street, Suite 2500 |

US 5090234v.57

New Orleans, LA 70130
Attn: William H. Patrick III;
Tristan Manthey; and
Cherie D. Nobles

G.    *Term of Injunctions or Stays*

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.    *Entire Agreement*

Except as otherwise indicated, and without limiting the effectiveness of the RSA, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.    *Plan Supplement Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above, by downloading such exhibits and documents from the Bankruptcy Court's website, available via PACER, or by downloading such exhibits and documents from the Solicitation Agent's website at address <https://www.donlinrecano.com/Clients/knight/Index>. Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan unrelated to such exhibit or document in the Plan Supplement, the provisions of the Plan shall control.

J.    *Non-Severability*

The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors and the Majority Consenting Lenders, consistent with the terms set forth herein; and (c) non-severable and mutually dependent.

K.    *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to

70

US 5090234v.57

section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

L.      *Closing of Chapter 11 Cases*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

M.      *Waiver or Estoppel*

Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated, or treated otherwise than as stated in this Plan by virtue of any alleged agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, the RSA, or papers filed with the Bankruptcy Court prior to the Confirmation Date and the Plan does not provided for such treatment.

US 5090234v.57

Respectfully submitted,

KNIGHT ENERGY HOLDINGS, LLC, et al. on behalf of itself and its direct and indirect subsidiary Debtors

By:     */s/Gary L. Pittman*
Name:  Gary L. Pittman
Title:   Chief Restructuring Officer

HMC LEASING, LLC, et al. on behalf of itself and its direct and indirect subsidiary Debtors

By:     */s/Gary L. Pittman*
Name:  Gary L. Pittman
Title:   Chief Restructuring Officer

KNIGHT FAMILY ENTERPRISES, LLC, et al. on behalf of itself and its direct and indirect subsidiary Debtors

By:     */s/Gary L. Pittman*
Name:  Gary L. Pittman
Title:   Chief Restructuring Officer

72